JOHN FAHEY & another *vs.* CLARA C. PEASE & others.

Hampden. January 12, 1933. — April 25, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Equity Pleading and Practice*, Appeal. *Equity Jurisdiction*, To relieve from the results of fraud, Rescission. *Contract*, Rescission. *Waiver.*

Where one of several defendants in a suit in equity appealed from an interlocutory decree overruling his demurrer to the bill, but did not appeal from a later interlocutory decree overruling his demurrer to the bill in an amended form; filed an answer to the amended bill; and appealed, with the other defendants, from a final decree, entered after a hearing on the merits, in which no relief was granted against him, he had waived his right to question the propriety of the decree overruling his demurrer to the original bill, and this court did not consider his appeals further.

No appeal having been claimed in a suit in equity from an interlocutory decree overruling a demurrer to the bill, this court, on appeal from a final decree, did not consider matters of pleading; it was enough that the bill set out facts sufficient to support the final decree.

In a suit in equity for rescission of a sale to the plaintiff by an incorporated golf club of which one of the defendants was an officer, director and principal stockholder, it appeared that, in the negotiations for the sale, it was represented to the plaintiff by that defendant that there were seventy-eight outstanding certificates entitling the holders thereof to use the facilities of the club, and it was understood that another defendant, who had interested the plaintiff in the sale, was to be a purchaser equally with the plaintiff; that the contract of sale provided for payment of the purchase price in two instalments, for the transfer of the property of the club and the stock therein to a trustee and for the extinguishment of the outstanding certificates by

the first defendant; that, after the plaintiff and the second defendant had paid to the first defendant the first instalment of the purchase price, the plaintiff learned that there had been only fourteen outstanding certificates, but was willing then to go on with the transaction; and that, before the second instalment was paid, the plaintiff learned that the second defendant had acted in behalf of the first defendant, that the amount previously paid by the second defendant had immediately been returned to him and that the first defendant had lent him a part of the money paid by the plaintiff; and thereupon the plaintiff refused to go on with the transaction and commenced the suit. A final decree was entered ordering the first defendant to pay back to the plaintiff the money paid by him, to pay the trustee his expenses, and ordering the property and stock of the club returned to their owners. *Held*, that

(1) The conduct of the second defendant was a fraud upon the plaintiff in which the first defendant and the club were implicated;

(2) The misrepresentation concerning the number of outstanding certificates was material;

(3) Even if the plaintiff were willing to waive such misrepresentation previous to learning of the fraud practiced by the second defendant, he was not bound to overlook it after he had been informed of such fraudulent conduct;

(4) There was no error in the decree.

Upon appeal by the defendants in a suit in equity from a final decree from which the plaintiff did not appeal, it was too late for the plaintiff to ask, in his brief before this court, for changes in the decree going beyond mere clerical corrections and imposing added burdens on one of the defendants; the appeal of that defendant did not open to the plaintiff the opportunity to make such demands.

BILL IN EQUITY, filed in the Superior Court on May 19, 1930, described in the opinion, against Clara C. Pease, Charles E. Pease, Georgianna L. Conway, Albert J. Conway, John F. O'Hara, Colony Golf Club, Incorporated, and Union Trust Company of Springfield.

The defendants Georgianna L. Conway and Albert J. Conway demurred to the bill. An interlocutory decree overruling the demurrer was entered. Those defendants appealed. The bill then was amended. All the defendants demurred to the amended bill. An interlocutory decree overruling this demurrer was entered, from which there was no appeal. All defendants, except O'Hara and the Union Trust Company of Springfield, then answered. The suit thereafter was heard by *Whiting*, J., by whose order the final decree described in the opinion was entered. The

defendants, except O'Hara and the Union Trust Company of Springfield, appealed therefrom.

The case was submitted on briefs.

*N. M. Harvey & J. H. Mulcare,* for the defendants.

*J. McN. Holmes & R. J. Talbot,* for the plaintiffs.

WAIT, J. The defendants Charles E. Pease, Clara C. Pease, the Colony Golf Club, Incorporated, Georgianna L. Conway and Albert J. Conway appeal from a final decree. No relief against the last two was decreed, and they were found innocent of the fraud for which remedy is given against the other appellants. We are unable to see that they have been aggrieved. They claimed an appeal from an interlocutory decree overruling their demurrer to the bill as originally filed; but, later, they joined in a demurrer to the bill as amended, and from an interlocutory decree overruling that demurrer no appeal was claimed. They filed answer to the bill as amended. They have waived any right to be heard on the earlier demurrer. They need not be considered further. *Harrell* v. *Sonnabend,* 191 Mass. 310, cited by the defendants, is not authority to the contrary. It rests on different circumstances. As no appeal was claimed from the interlocutory decree overruling the demurrer to the amended bill, we need not consider matters of pleading. It is sufficient that the bill sets out facts upon which a decree may properly be entered.

Those facts are as follows: Defendant O'Hara, at the solicitation of Charles E. Pease, interested the plaintiffs in a proposed purchase of the golf links of the Colony Club at Thompsonville, Connecticut. The land subject to encumbrances belonged to Clara C. Pease, who with her husband had organized the corporation in Connecticut, leased the land to Mrs. Conway, who assigned to the club and, with him, held practically all the capital stock which, on the incorporation, had first been issued to the Conways. After negotiations throughout which the plaintiffs understood that O'Hara was a purchaser on equal shares with themselves, a contract was drawn up. The Peases and Conways were parties of the first part; the Colony Club, of the second; the plaintiffs and O'Hara, of the third, and

the defendant Union Trust Company of Springfield, of the fourth part. It provided that the plaintiffs and O'Hara were to pay $30,000 and that specified things were to be done by the other parties. The Union Trust Company was to receive and hold title to the real estate, personal chattels and certificates of stock in the Colony Club upon specified trusts, and to be paid for its services and expenses. The parties of the third part were to pay $18,000 when the agreement was executed, and $12,000 on or before April 1, 1930, at the option of the parties of the third part when, simultaneously, certain transfers were to be made. One of the things to be done by the Peases was to extinguish all outstanding certificates entitling the holders to use the links and clubhouse. In the negotiation as to price, the Peases represented that there were seventy-five or seventy-eight of these; and that it would require from $7,500 to $7,800 to call them in. In October, 1929, the plaintiffs each gave a check for $6,000 to the agreed agent for the parties of the first part. O'Hara also delivered to the agent his check for a like amount. This was immediately returned to him without the plaintiffs' knowledge, but in accord with the understanding between him and the Peases. The latter also loaned him $2,000 from the amount received by them. Work on the links pursuant to the contract was carried on by the Peases and Colony Club. In February, the plaintiffs learned that, instead of there being seventy-five or more playing certificates to be redeemed, there were, in fact, only fourteen; but, about April 1, when they began negotiations to make the $12,000 payment, they met with the other parties and were prepared to go on in spite of this misrepresentation. At the meeting it was understood everything was ready for concluding the transaction. It was agreed to meet the next day to complete. The plaintiffs' counsel remained after the plaintiffs had left the meeting, and then learned, for the first time, of O'Hara's double dealing — that O'Hara had acted in behalf of the Peases, had in fact paid no part of the $18,000 payment, and had been loaned $2,000 by them. The plaintiffs were notified at once. They refused

to go on. O'Hara went to them and endeavored to make a satisfactory settlement. Negotiations with the other parties to the contract failed. In May the plaintiffs filed this bill, which, among other things, set out false representations with respect to the playing certificates and with regard to O'Hara. They asked rescission and an accounting. All parties in interest are before the court. The title to land, goods, and all the certificates of stock (indorsed in blank) is held by the trust company, a resident of Massachusetts.

The judge found the transaction to be fraudulent. The decree annulled the contract, and ordered the Peases to repay to each plaintiff the $6,000 which he had paid, with interest; to pay $709.60 to the trust company for its just charges and expenses; and to pay costs in stated sums. It further ordered that if within twenty days from its date they paid in to the clerk the amount called for above, the clerk should pay over the several amounts decreed to the plaintiffs and the trust company, and the trust company should reconvey the land to its grantor, the goods to the vendor named in the bill of sale, and the certificates of stock to the registered owners. If they failed so to pay, then a commissioner named was to sell the land and stock and to dispose of the proceeds as directed in appropriate provisions. If not enough was obtained to pay the plaintiffs, they were to have execution against the Peases for the balance unpaid. The trust company, after the sale and transfer of the stock as decreed, was to reconvey to the Colony Club the personal property which had been transferred by the latter.

No extended argument is needed to show that O'Hara's conduct was a fraud upon the plaintiffs, in which Clara C. and Charles E. Pease were implicated, and, through them, the Colony Club of which Charles was secretary and treasurer and Clara was a director as well as its largest stockholder. *Shadman* v. *O'Brien*, 278 Mass. 579. The representation with regard to the playing rights was material. In reaching an agreement on $30,000 as a purchase price the difference between fourteen outstanding rights and

seventy-five was significant. Until they knew of the O'Hara transaction the plaintiffs seem to have been willing to waive this; but we think they were not bound to overlook it when they learned of other perfidy. No rights of third parties are present to limit the right to rescind for the fraud practised. It is true that the defendants had performed or could be found ready to perform what the contract bound them to do; but an essential element of the contract for the third party disappeared when O'Hara proved not to be a genuine buyer. The plaintiffs have received nothing, and had nothing which they could tender or return as a condition of rescission. No one is harmed by the decree except the defendants whose conduct made the decree possible. Even they get back what they formerly had, if they return what they received from the plaintiffs.

There was no error in annulling the contract; in ordering the Peases to return their money to the plaintiffs and make payment to the trust company; and in providing, in the event of payment by the Peases, for transfers of the property held by the trust company to those from whom it was received. This would leave all parties as nearly as possible in the situation in which they stood before the vitiated contract was made.

The plaintiffs suggest alterations in the decree which go beyond mere clerical corrections. They ask in their brief that payment by the Colony Club be required. They did not appeal. We think it too late for them now to ask other than clerical changes in the decree. The appeal of the Colony Club does not open to them opportunity to demand added burdens on that club.

No argument is made by the appellants attacking the decree in so far as it relates to a sale of the interest of Clara C. Pease in the land in Connecticut and the appointment of a commissioner to make such sale. We, therefore, treat any questions with regard thereto as waived, and do not consider them.

*Decree affirmed with costs.*