ARTHUR BURWEN vs. SYLVIA BURWEN.

Suffolk.   December 10, 1973. — March 12, 1974.

Present: HALE, C.J., KEVILLE, GRANT, & ARMSTRONG, JJ.

*Equity Pleading and Practice*, Interlocutory decree, Waiver, Appeal.
   *Waiver.   Trust*, Resulting trust.   *Gift.   Husband and Wife*, Gift.
   *Fraudulent Conveyance*.

Certain grounds for demurrer to a bill in equity were merely matters
   of pleading which were waived by the defendant by a failure to
   appeal from an interlocutory decree overruling the demurrer.
   [31]
A certain bill in equity by a husband against his wife seeking a deter-
   mination of ownership of securities, real estate, and other assets
   was held not to be multifarious.   [31-32]
In a suit in equity between husband and wife, findings with respect
   to securities purchased with the husband's money but registered
   upon their purchase in the wife's name to prevent attachments,
   that he at all times had acted as the owner and that she by her
   conduct had indicated an acknowledgement of his ownership justi-
   fied a conclusion that she held the securities in trust for him al-
   though there was no express agreement to that effect between
   them.   [32]
In view of all the facts, the mere fact that when securities were pur-
   chased with a husband's money they were registered in his wife's
   name to avoid attachments did not require a conclusion that such
   transaction was a fraud on his creditors precluding him from
   establishing, in a suit in equity against his wife, that she held the
   securities in trust for him.   [32-33]

BILL IN EQUITY filed in the Superior Court on Septem-
ber 4, 1968.

A demurrer and the merits were heard by *Roy*, J.

*Charlotte Anne Perretta* for the defendant.

*Sumner Z. Kaplan* for the plaintiff.

ARMSTRONG, J.   By this bill in equity the plaintiff
Arthur Burwen seeks to determine the ownership of cer-
tain securities and other assets standing in the name of his
wife Sylvia Burwen, the defendant.   The defendant filed

a demurrer, which was overruled by an interlocutory decree from which she did not appeal. After a trial on the merits, the judge found that the husband was entitled to all the securities and that the wife was entitled to the family home, a car, and certain sums withdrawn by her from various bank accounts. The wife appeals from the final decree. The evidence is reported.

The judge made voluntary findings which we briefly summarize. In 1956 the husband organized Birch Manufacturing Corporation, supplying all the capital. The shares, however, were placed in the wife's name on advice of an accountant to prevent attachments which might arise out of the husband's business activities. Although the wife did some clerical work for the corporation during the ensuing ten years, she exercised no direction or control over the company, and the husband made all decisions in the business.

In 1961 the husband negotiated a sale of the Birch stock to Ovitron Corporation for 100,000 shares of Ovitron stock, which were placed in the wife's name. Two years later the husband arranged the sale of this stock for $300,000, which was received in the form of a check payable to the wife. Much of the $200,000 remaining after taxes was invested in the various securities registered in the wife's name which, together with dividends thereon, and certain proceeds resulting from a sale thereof, are in issue in this appeal.[1]

The judge found that when the securities were purchased there was no express written or oral agreement that they were to be held by the wife for the husband,

---

[1] Some of the securities were apparently held in a brokerage account standing in the wife's name, and dividends were accumulated in the account. Others were pledged as collateral to secure a bank loan to the husband. After this suit was commenced, the wife obtained some of the securities so pledged, sold them, and deposited the proceeds of the sale in a bank account. The judge treated these proceeds as he did the securities and other funds in the brokerage account and the remaining securities pledged to the bank, ruling that they all belonged to the husband.

but that the wife was aware that they were registered in her name merely to prevent attachments, and that her conduct had at all times indicated an acknowledgement that they were the husband's property. The judge found that the husband had in fact acted at all times as the true owner of the shares and had made all decisions in transactions involving them. As to certain other assets the judge found that the evidence was insufficient to overcome the presumption that placing title in the wife's name represented a gift to her, and that as to various sums withdrawn by the wife from various bank accounts there had been an understanding between the parties that she was at liberty to use these funds for herself or for family purposes in her discretion.

The wife argues (1) that her demurrer should have been sustained, and (2) that the evidence at trial in regard to her husband's intent when he placed the securities in her name not only failed to rebut the presumption that a gift to her was intended but also precluded such rebuttal because a purpose to defraud creditors was shown.

As no appeal was taken from the interlocutory decree overruling the demurrer, the issues raised in the demurrer are not before us except in so far as the final decree may be erroneously affected thereby. G. L. c. 214, § 27. Two grounds for the demurrer are argued: first, that the paragraphs of the bill relating to certain assets, including the securities at issue, are vague and conclusory, and second, that the bill is multifarious. Other grounds for the demurrer are waived because they are not argued. Rule 1:13 of the Appeals Court. The two grounds argued are, in our opinion, merely "matters of pleading" waived by failure to appeal. *Fahey* v. *Pease*, 282 Mass. 609, 611 (1933). Should *Collins* v. *Keefe*, 332 Mass. 375, 378 (1955), be read to imply that the ground of multifariousness is open on appeal from the final decree, it is our opinion that the bill is not multifarious, as it does not "[raise] issues too diverse and complex to be

dealt with in a single proceeding efficiently and with fairness to the [defendant] . . .. The allegations of the bill have sufficient connection and cohesion to make them proper subjects for judicial inquiry in a single proceeding." *Peterson* v. *Hopson,* 306 Mass. 597, 610-611 (1940). See *Robinson* v. *Guild,* 12 Met. 323, 328 (1847). The bill sufficiently "sets out facts upon which a decree may properly be entered." *Fahey* v. *Pease, supra.*

The merits of the issue raised by this appeal, the judge's conclusion that the wife held the various securities and dividends therefrom in trust for the husband, are governed in every material respect by the recent case of *Krasner* v. *Krasner,* 362 Mass. 186 (1972). As in the *Krasner* case, there was here no express agreement between the parties that the securities were to be held in trust; but there was an understanding to that effect implied in the conduct of the parties, and, as the judge in the present case found, a "recognition and acknowledgment by her that she was holding these assets in trust for the [husband] . . .." The evidence of the purpose for which the securities were placed in the wife's name, of the exclusive dominion and control exercised over the purchases and sales of securities by the husband, and of the fact that the securities were never transferred from the husband's name to the wife's but were put in her name upon purchase (see the *Krasner* case, at 190) adequately supports the judge's findings.

The wife contends that the husband's admitted purpose in having title to the securities taken in her name was fraudulent as against creditors, and cites *Lufkin* v. *Jakeman,* 188 Mass. 528, 532 (1905), and *Pollock* v. *Pollock,* 223 Mass. 382, 385 (1916), for the proposition that he may not show a resulting trust by relying on his purpose in reference to creditors. Those cases do not control the one before us. It is true, as stated in the *Lufkin* case, at 532, that "if the resulting trust was directly the creature of the fraud, and rested upon that, independently and alone, a court of equity might decline to enforce it." But

here the husband's purpose in respect of creditors is only one item of evidence consistent with a general intention not to make a gift; and, furthermore, there is no indication in this record that the transaction was in fact in fraud of creditors. *MacNeil* v. *MacNeil,* 312 Mass. 183, 186 (1942). *Murphy* v. *McKenzie,* 1 Mass. App. Ct. 553, 560 (1973). "Where . . . one substantially free from debt transfers property to or for the benefit of his wife or family, so that it shall not be exposed to the hazards of future business or be subjected to the risks of improvidence, this is not fraudulent as to subsequent creditors . . .. In order that such transfer may be . . . tainted with fraud, it must further appear expressly or impliedly that there was an intent on the part of the transferrer to contract debts in the future and avoid payment of them because of the transfer of his property." *Cram* v. *Cram,* 262 Mass. 509, 512 (1928). In this respect also, the facts of this case are indistinguishable from *Krasner* v. *Krasner, supra,* where "[t]itle to the property was placed in the . . . [wife's] name 'merely as a convenience' to safeguard it from attachments since the . . . [husband] was beginning his medical practice and feared malpractice suits." 362 Mass. at 188. In *Pollock* v. *Pollock, supra,* there appears to have been an intent by the husband, who had been sued, to place the property conveyed to the wife beyond the reach of persons who had "present existing legal rights . . . which it was the duty of the . . . [husband] to discharge and which if he did not might ripen into judgments." 223 Mass. at 385.

*Final decree affirmed.*