FLORENCE G. SMITH *vs.* HERMAN R. SMITH & another.

Middlesex. December 10, 1942. — April 27, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Agency,* What constitutes, Agent's duty of fidelity, Agent's liability to principal. *Joint Enterprise. Husband and Wife. Equity Jurisdiction,* Husband and wife, Reformation. *Deed,* Reformation. *Real Property,* Tenancy by the entirety, Joint tenancy. *Tenants by the Entirety. Joint Tenants.*

Findings by a master showed that an arrangement between a husband and his wife, whereby the husband traded in the stock market through a brokerage account of the wife after having established a credit by signing a note to a bank secured by a pledge of stock belonging to her, was not a joint enterprise for their mutual profit, but was merely an agency of the husband for the wife to carry on the transactions without acquiring ownership of any of the property involved; and he was accountable to her in equity respecting stock so bought and taken in his name or the proceeds thereof.

A deed of real estate from a straw, to whom a wife had conveyed it, to her and her husband as tenants by the entirety accomplished their intention to "create a joint tenancy" in order to have the title in such form that upon the death of one the property would "automatically" pass to the other without the necessity of probate respecting it, and the wife was not entitled to have the deed reformed so that the property would stand in their names "as joint tenants and not as tenants by the entirety."

BILL IN EQUITY, filed in the Superior Court on June 25, 1941.

The suit was heard by *Good,* J., upon a master's report and in this court was submitted on briefs.

*C. D. Driscoll & R. S. Driscoll,* for the defendant Smith.

*W. A. E. Anderson,* for the plaintiff.

DOLAN, J. This is a bill in equity brought by the plaintiff against her husband, the defendant Smith (hereinafter referred to as the defendant), for an accounting and to establish her title to certain shares of stock, and against the defendant Specht to reach and apply a debt alleged to be owed by him to the defendant, and also for the reformation of a deed conveying certain real estate to the plaintiff and the defendant as tenants by the entirety.

The case was referred to a master who filed his report, and appended thereto the written objections brought in by the defendant. An interlocutory decree was entered by the judge overruling the defendant's exceptions to and confirming the report. A final decree was entered ordering the defendant to transfer and deliver to the plaintiff one hundred shares of stock of Swift International Company Ltd. and to pay to the plaintiff $300, the amount of dividends that he had received on account thereof, and that he pay to the plaintiff $1,302.97, the sum received by him from the sale of one hundred shares of stock of New York Central Railroad Company which had been purchased with the proceeds of the sale of forty shares of stock of National City Bank, of which the plaintiff "was the owner." Directions in the decree for the application of the amount found due to the defendant from Specht in the event of the failure of the defendant to comply with the foregoing terms of the decree need not be recited.

The decree further ordered the defendant to join with the plaintiff in conveying title to the real estate at No. 2202 Commonwealth Avenue (in Newton), so that the record title "shall be" in the names of the plaintiff and defendant "as joint tenants and not as tenants by the entirety." The defendant appealed from the interlocutory decree and from the final decree.

The report of the master does not state nor show on its face that his ultimate findings are based solely on the subsidiary facts found by him. See *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. The defendant orally waived his request for a summary of the evidence upon which the master's findings were based. His objections to the master's report were all to findings of fact of the master, and he made no motion to recommit the report for further findings. His objections, which became exceptions by implication of law, *Chopelas* v. *Chopelas*, 303 Mass. 33, 35, were properly overruled.

Material facts found by the master follow: The plaintiff and the defendant were married in July, 1935. At that time the plaintiff was the owner of certain shares of stock which stood in her own name. She was also the owner of the dwelling house at No. 2202 Commonwealth Avenue in Newton in which she and the defendant lived following their marriage. The defendant contributed $10 a week for "the table" while they lived together in this house. In all other respects they "were and have been self-supporting." In May, 1938, the defendant suffered a heart attack and was ill for "quite some time." After his recovery he was unable to conduct his business and at various times he discussed with the plaintiff "trading in the stock market as a means of increasing their income." On December 20, 1939, he signed a promissory note payable to the National Bank of Chelsea for $4,400, thus establishing a credit in that amount. Stocks owned by the plaintiff were pledged as collateral security for the payment of this note, and thereafter the defendant bought and sold stocks through J. S. Bache & Co., hereinafter referred to as the brokers, the title to all of the stocks purchased except as hereinafter

stated being taken in the name of the plaintiff. The transactions were executed through the plaintiff's account with the brokers. It "was the intention of the parties that the stock pledged as collateral . . . should remain the personal property of the plaintiff and that all new stocks purchased during the course of the trading should be bought in the name of the plaintiff and should remain her personal property." The plaintiff never intended to make a gift to the defendant of any of the stock owned by her or that the defendant "should acquire any ownership in the stock purchased by the defendant while trading in the market." The plaintiff executed a power of attorney on January 29, 1940, giving the defendant authority to act for her, and authorizing stocks to be placed in either her name or that of the defendant, and payments for stock sold to be made to either. This document was delivered to the brokers. "The giving of this power of attorney was solely for trading purposes and was not intended to vary or change the arrangement between the parties as hereinabove stated."

The loan from the National Bank of Chelsea was increased on March 8, 1940, to $10,000, and on June 21, 1940, that loan was taken over by the First National Bank in Medford, and, as collateral security, the stocks of the plaintiff were again pledged. The note was signed by the defendant alone. In 1941, this loan was reduced from time to time by the sale of certain of the collateral, "part of the plaintiff's stock."

In January, 1941, the plaintiff owned forty shares of the stock of the National City Bank, which had been purchased by the defendant. He sold the stock through the brokers for $1,152.01, and with these funds bought one hundred shares of stock of the New York Central Railroad Company on or about February 18, 1941. "Then for the first time since the commencement of the stock market trading, the defendant had this stock issued in his own name, this fact being unknown to the plaintiff."

In 1941 the defendant sold twelve shares of stock of the Allied Chemical & Dye Corporation, which were owned by the plaintiff prior to her marriage, and purchased with the

proceeds of the sale one hundred shares of stock of Swift International Company Ltd. He requested the First National Bank in Medford to have these shares issued in his name. The plaintiff became aware of this and wrote the bank, stating that it was her assumption that she was responsible on the note and requesting that the stock be issued in her name. The stock was issued in the name of the defendant, who has refused to transfer it to the plaintiff. The master found that in so far as it was a question of fact these shares of stock are the property of the plaintiff. On June 17, 1941, she cancelled the power of attorney before referred to, and on June 23, 1941, when the note to the Medford bank became due, it was cancelled and the plaintiff signed a new note for $6,163.10, the balance due on the cancelled note, pledging shares of stock as collateral security for this loan. The findings of the master with relation to the real estate will be recited hereinafter.

The defendant has argued that the plaintiff and the defendant "arranged to trade 'in the stock market as a means of increasing their income'"; that this "was an agreement between them which contemplated, and in its performance effected, the placing of credit, personal obligation, labor and skill of the defendant, on the one hand, and the shares of stock of the plaintiff, on the other hand, in an enterprise for profit for their mutual benefit"; that the defendant thus contributed his personal credit and talent to the arrangement which was "like a partnership"; that the case is governed by such cases as *Moat* v. *Moat*, 301 Mass. 469, and *MacNeil* v. *MacNeil*, 312 Mass. 183, 187, and hence that no resulting trust of the property in question arose in favor of the plaintiff.

We do not sustain the foregoing contentions nor adopt the premise upon which they are based. There is no finding by the master that it was ever agreed by the parties to increase "their" income by trading in the stock market. While the master found that that subject matter was discussed by them, it was discussed when the subject of trading in the market was first considered by the parties, but it was not embraced in the final arrangement made

between them as to which the master found that it was not
the intention of the parties that the defendant should
acquire any ownership in the stock purchased by the defend-
ant while trading in the stock market or in its proceeds,
but that it was intended that the collateral pledged should
remain the personal property of the plaintiff, that all new
stocks should be bought in her name and remain her prop-
erty, and that the power of attorney before referred to was
not intended to vary or change the arrangement between
the parties, but was only intended for trading purposes.
It seems obvious that these findings would not support a
conclusion that the plaintiff intended that the defendant
should have a beneficial interest in the securities pledged
for the loans or in the securities bought or sold or in the
proceeds of those sold.

The essential elements of a partnership or joint enterprise
could not be held properly to exist on the findings of the
master and the reasonable inferences to be drawn therefrom.
Compare *Edgerly* v. *Equitable Life Assurance Society*, 287
Mass. 238. On the findings and proper inferences there-
from (see *Robinson* v. *Pero*, 272 Mass. 482, 484) the proper
conclusion is that the signing of the original notes by the
defendant was not a contribution by him to an enterprise
for the mutual benefit of himself and the plaintiff, but that
it was merely a loan of credit to the plaintiff, *Davis* v.
*Downer*, 210 Mass. 573, 576; *Gerace* v. *Gerace*, 301 Mass.
14, 17, 18; that as between the parties she was to be respon-
sible for the loans; and that they were in fact paid in part
out of the proceeds of the sale of part of her property, the
collateral, and finally satisfied in full by payment in the
form of a new note which she alone signed. All purchases
and sales were made through her account with the brokers.
The conduct of the parties and the interpretation placed
upon the arrangement in question by them serve to support
by reasonable inference a conclusion that, as between them,
it was intended that the defendant should not acquire any
interest in any of the property involved, nor incur any obliga-
tion to do other than to lend his credit by way of signing the
original notes and to be faithful to the confidence reposed

in him by the plaintiff growing out of the marital relationship. See *Jason* v. *Jason*, 289 Mass. 72, 79. Such cases as *Moat* v. *Moat*, 301 Mass. 469, and *MacNeil* v. *MacNeil*, 312 Mass. 183, relied upon by the defendant, are distinguishable on the facts. In those cases each spouse contributed to the purchase price of the property involved and there was no evidence of any agreement at the time of conveyance or prior thereto that either was to receive any definite or fixed fraction of the property conveyed, or that the contribution of the husband was not intended to be by way of advancement or gift to his wife; and hence, in those cases, it was decided that the property was not held by the wife upon a resulting trust. Obviously the express understanding and intention of the parties, as found by the master in the present case, distinguish it from the cases relied upon by the defendant.

The findings of the master with relation to the understanding of the parties and their conduct, and the proper inferences to be drawn therefrom, lead to the conclusion that the defendant was no more than an agent to buy and sell securities for the plaintiff, subject to the duty to be loyal to the plaintiff and to act in accordance with his undertaking (Am. Law Inst. Restatement: Agency, §§ 377, 378, 424), and thus accountable in equity to the plaintiff, who by virtue of her status as the wife of the defendant cannot proceed against him at law. *Gahm* v. *Gahm*, 243 Mass. 374, 376, and cases cited. See Am. Law Inst. Restatement: Agency, § 399, Comment (e). "The doctrine that a husband may be the agent of his wife is too familiar to need the citation of authorities." *Duggan* v. *Wright*, 157 Mass. 228, 232.

There was no error in the decree entered by the judge with respect to the personal property involved in this suit.

There remains for consideration whether the reformation of the deed of the real estate in question was properly decreed by the judge.

The findings of the master as to that subject matter may be summarized as follows: On or about February 21, 1936, the plaintiff and the defendant each executed a will in favor

of the other except for a few minor bequests, and the defendant told the plaintiff that if the real estate were put in their joint names that would save the necessity of probate in relation to the property and would greatly aid in its handling. The plaintiff was agreeable to this and conveyed the property to a straw who, in turn, conveyed it to the plaintiff and the defendant as tenants by the entirety. Neither "knew the legal significance of an estate by the entirety and intended to create a joint tenancy, whereby the property would pass to the survivor on the death of the other. . . . the defendant exercised no undue influence or fraud upon the plaintiff in relation to the . . . conveyance and . . . all both parties intended by the transfer was to put legal title to the property in such a manner that the property would automatically pass to the other in the event of death." The plaintiff at no time "objected to this or demanded that the property be reconveyed."

In support of the decree entered by the judge the plaintiff relies upon *Franz* v. *Franz*, 308 Mass. 262. The defendant, on the other hand, contends that that case is distinguishable on the facts. We think it is. In the *Franz* case the parties clearly instructed the scrivener that they wished a deed to be drawn giving them equal rights in the property. The scrivener, however, to whom a conveyance had been made by the wife for that purpose, nevertheless conveyed the premises to her and her husband as joint tenants without more. This operated to make them as of record tenants by the entirety. *Hoag* v. *Hoag*, 213 Mass. 50, 53. This did not carry out the direction of the parties — their expressed intent that they were to have equal rights under the deed. The inequality of rights in a tenancy by the entirety as between husband and wife is referred to in the *Franz* case and cases there cited at page 265. Since the deed in that case was not drawn in accordance with their expressed intent and the expected legal consequences were not provided for therein, it was held that the deed should be reformed so as to run to the husband and wife as joint tenants but not as tenants by the entirety.

In the *Franz* case, quoting Williston, Contracts (Rev. ed.)

§ 1585, the court said (page 267): "For relief 'It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention.'" In the instant case, upon the facts found by the master we think it cannot be said properly that the deed in question did not accomplish the particular object sought by the plaintiff and the defendant, or that it did not effectuate their intention. The ultimate finding of the master set forth above is not inconsistent with his subsidiary findings. While he has found that both parties did not know the legal significance of a tenancy by the entirety, yet only such a tenancy would accomplish their purpose, clearly expressed, that the conveyance to them should be such that, in the event of the death of one, probate proceedings with relation to the premises would be unnecessary and the property would "automatically pass to the other." A mere joint tenancy would not assure that result, since thereunder either of the parties could convey his or her interest subject to the statutory rights of the other, and either could compel a partition by sale or division of the property. G. L. (Ter. Ed.) c. 241, § 1. That would not effectuate the expressed intent of the parties in the present case, that in the case of the death of one the property should "automatically pass to the other."

The decree entered in the court below is to be modified by striking out the sixth paragraph, wherein reformation of the deed was directed, and instead, it is to be ordered that the prayer for reformation thereof be denied. As so modified the decree is affirmed.

*Ordered accordingly.*