RUTH M. SWENSON *vs.* EDWARD C. SWENSON & others.

Essex.  May 9, 10, 1946. — July 3, 1946.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Joint Tenants.  Personal Property,* Joint tenancy.  *Equity Jurisdiction,* Plaintiff's clean hands.  *Husband and Wife.*

Upon separation of a husband and wife, an equal division between them of funds accumulated in their joint names during his absence as an officer in the United States navy, rather than a division according to the source of the funds, was properly ordered, in a suit by the wife against the husband, upon warranted findings and conclusions of a master that such funds were accumulated "with the understanding that in event of the defendant's death they were to be her sole property; in event that the defendant returned to a civilian status, they

were to be used for the joint purposes of the plaintiff and the defendant; . . . the defendant was to defray his expenses while in the service from his rental and subsistence allowance, and the plaintiff was to defray her expenses while the defendant was in the service from the wages that she was to receive from her employers," and that during the accumulation the parties did not contemplate a disagreement or separation and no express arrangement was made as to disposition of the funds in such an event.

The mere fact that a wife for some unexplained reason was unable to account for a substantial part of allotments sent her by her husband, an officer in the United States navy, to be held for their joint benefit, did not show fraud or unclean hands barring a suit in equity by her against him for a division of their joint funds after their separation.

BILL IN EQUITY, filed in the Superior Court on September 5, 1945.

Following confirmation of a master's report, a final decree was entered by order of *Donahue*, J.

*E. C. Jacobs*, for the defendant Swenson.

*W. E. Sisk*, for the plaintiff.

WILKINS, J. The plaintiff, who is a minor and the wife of the individual defendant, brings this bill in equity by her father and next friend to recover certain war savings bonds and to obtain an accounting for the proceeds of certain deposits in three defendant banks. The answer in substance denies that the plaintiff had any interest in the property, and sets up that the bonds and deposits had been in the joint names of the husband (hereinafter referred to as the defendant) and the wife, but subject to an understanding that the plaintiff was to have no interest in them unless "something should happen" to the defendant while he was away in the armed service. The answer also alleges that the plaintiff had failed to account for certain funds and so could not maintain the suit. The case was referred to a master, who filed a report. An interlocutory decree was entered overruling the defendant's exceptions and confirming the report. A final decree was entered declaring that the defendant owed the plaintiff $1,392.94 and that the defendant was trustee for the plaintiff of forty bonds; ordering the defendant to pay that sum of money and to deliver the bonds to the plaintiff; and dismissing the bill against the defendant banks. The defendant appealed.

The facts given below were found by the master. The plaintiff and the defendant were married on November 21, 1942. He was aged twenty-five and an officer in the navy. She was aged seventeen and employed by a company in Salem. Soon after the marriage she entered the employ of a company in Lynn, and continued in its employ down to the beginning of this suit. The defendant was on duty at various stations, including Portland, Maine, Iceland, and San Francisco, California. He was placed on inactive duty September 3, 1945.

At the time of the marriage the plaintiff had a deposit in the Salem Five Cents Savings Bank, which she caused to be changed so as to be made payable to "Edward C. or Ruth Swenson." On September 5, 1945, the date of filing the bill of complaint, this account amounted to $90.91. At the time of the marriage the defendant had an account with the Equitable Co-operative Bank with a balance of $371.70, and an account with the Lynn Institution for Savings with a balance of $728.85. These accounts the defendant caused to be changed so as to be payable to "Edward C. Swenson or Ruth M. Swenson, or the Survivor." Another account in the Lynn Five Cents Savings Bank, representing the repayment of a loan which had been made by the defendant to his sister, was changed at his request to a new account entitled, "Edward C. Swenson or Ruth M. Swenson, payable to either or the survivor." The plaintiff signed the signature cards and received the books, two of which she held until April, 1945, and one of which she held until July, 1945, when she gave them to the defendant at his request along with the greater part of the war bonds hereinafter referred to.

The defendant made allotments from his navy pay to the plaintiff, out of which she made deposits in the various banks, purchased war savings bonds, and made other agreed expenditures. The allotments were not intended as gifts by the parties, but "it was their intention that the funds derived from the allotments should be held by the plaintiff for the mutual benefit of the plaintiff and the defendant; . . . the defendant made, and the plaintiff accepted the allot-

ments with this understanding. . . . [The] allotments to the plaintiff were made, and the deposits in the bank[s] and the war savings bonds were turned over to her with the understanding that in event of the defendant's death they were to be her sole property; in event that the defendant returned to a civilian status, they were to be used for the joint purposes of the plaintiff and the defendant; . . . the defendant was to defray his expenses while in the service from his rental and subsistence allowance, and the plaintiff was to defray her expenses while the defendant was in the service from the wages that she was to receive from her employers. The parties at the time never contemplated a disagreement or a separation, and there was no express understanding between them as to the disposition of the deposits and the war savings bonds in the event of a disagreement or a separation."

The bonds were one hundred thirty-seven in number, costing $18.75 each. These were acquired at various times. Some were purchased by the defendant, part being under an allotment plan with the navy. Others were purchased by the plaintiff out of the navy pay allotted to her, and twenty-six she bought with her own wages. All but one of the bonds were payable to "Ruth M. Swenson or Edward C. Swenson." One bond, purchased by the defendant in January, 1943, was payable to "Edward Carl Swenson, P. O. D. Miss Ruth Mildred Nelson." That was the maiden name of the plaintiff, and was used, according to the defendant's explanation, because the marriage was not known at the time. "P. O. D." meant payable on death. The defendant knew the meaning of those letters and their legal effect. The other bonds were not made payable in that way because it was not what the parties intended.

The plaintiff received $4,740 in allotments of navy pay from August, 1943, to August, 1945, for $1,137.18 of which she was unable to account. "There was no explanation of this unaccounted for balance. It is a fact, however, that a change in the attitude of the parties occurred shortly prior to April 27, 1945; that the amount of allotments thereafter received by the plaintiff totaled $1,100, and there was no

evidence that she used any portion of this to purchase bonds or to make deposits."

Shortly after the defendant received the bank books and the bonds from the plaintiff, he returned to her the Salem Five Cents Savings Bank book and the twenty-six bonds she had bought with her own wages. The defendant retained one hundred nine bonds and the other bank books. The plaintiff received two bonds issued under the navy allotment plan, one in July, 1945, and one in August, 1945, for which she has not accounted. On September 4, 1945, the defendant withdrew the funds in the other banks, the amounts respectively being Equitable Co-operative Bank $668.40, Lynn Five Cents Savings Bank $1,548.97, and Lynn Institution for Savings $1,777.85.

The master found that "the plaintiff is entitled to one half of the joint funds, charging her with any unexplained deficiencies." The bank funds totaled $4,086.13. The master found that she was entitled to $2,043.07 less one half of the unaccounted for deficiency of $1,137.18 and less $90.91, the amount of the deposit in the Salem Five Cents Savings Bank, or a net amount of $1,383.57. With respect to the one hundred thirty-seven bonds, the master found she was entitled to sixty-eight and one half less the twenty-six which the defendant returned to her and less the two received in July and August, 1945, or a net total of forty and one half. The master found that she should receive forty bonds and $9.37 for the one-half interest in one bond.

The defendant contends that the master's conclusions are not permissible in view of the subsidiary findings. See *Dodge v. Anna Jaques Hospital*, 301 Mass. 431, 435–436. He urges that the subsidiary findings show no joint purposes of the parties at the time when suit was brought, and that at most he holds the bonds and money retained by him as trustee for her benefit or for their mutual benefit. But the findings show that the defendant had repudiated the understanding upon which the bonds were purchased and the bank accounts held, and that he had undertaken to terminate that arrangement by a division of the property according to the source of the funds and in a manner highly favorable to

himself. If the defendant were to succeed in this, he would escape the expense of supporting his wife, and would now receive for himself the full benefit of the savings in his own pay, which were larger than if the support of the plaintiff had fallen upon him. This would not be a reasonable interpretation of what would now be for their mutual benefit or joint purposes. We think that one reasonable view of the transactions which the master could take is that if the parties should desire to terminate the joint arrangement, as they obviously did, the property should be divided equally between them. That conclusion of the master was not precluded by his subsidiary findings.

The finding that the plaintiff had not accounted for the $1,137.18 does not constitute a defence to this suit. The facts do not show that she did not come into equity with clean hands. There was no fraud. The case does not fall within *Lovejoy* v. *Bailey*, 214 Mass. 134, 155. She could make out her case without reliance on any fraud. *O'Gasapian* v. *Danielson*, 284 Mass. 27, 34. *Kerwin* v. *Donaghy*, 317 Mass. 559, 573.                              *Final decree affirmed.*