PAUL J. YURKANIS *vs.* MARGARET E. YURKANIS.

Suffolk.  May 8, 1947. — June 3, 1947.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Husband and Wife. Equity Jurisdiction,* Husband and wife. *Equity Pleading and Practice,* Bill.

Under a bill in equity by a husband against his wife, alleging that the defendant was interfering with the plaintiff's possession, control and enjoyment of certain property individually owned by him, then in her possession, and seeking an injunction against such interference and general relief, where it appeared after hearing on the merits that the defendant had made an unauthorized sale of the property, it would be proper to grant relief by ordering the defendant to pay the plaintiff the proceeds of that sale; such relief would not be objectionable as being merely the equivalent of that obtainable in an action at law for damages which could not be maintained by a husband against a wife.

BILL IN EQUITY, filed in the Superior Court on October 21, 1943.

The case was heard by *Cabot,* J.

In this court the case was submitted on briefs.

*E. S. Searle,* for the defendant.

*V. J. Guaragna,* for the plaintiff.

DOLAN, J. This is a suit in equity, the parties to which are husband and wife. The bill contains allegations that on February 27, 1942, the plaintiff "executed a power of attorney . . . naming as attorney, the defendant, who was then and still is the plaintiff's wife. That thereafter, the defendant, purporting to act under said power and by its authority, from time to time interfered with the rights of the plaintiff in the possession or control and enjoyment of his individually owned property, namely: a 1942 Packard, touring clipper sedan; one insurance policy on the life of your plaintiff, written by the Prudential Insurance Company, in the amount of $5,000; seven one hundred dollar war bonds, and much personal property; and that she has continued to so interfere to the date hereof and threatens to continue such interference hereafter. That on October 20, 1943, your plaintiff revoked said 'power of attorney,' giving due notice of said revocation to the defendant." The prayers of the bill are: "I That temporary restraining order issue, restraining the said defendant from interfering with the plaintiff in the possession, control and enjoyment of his individually owned property. II That the said 'power of attorney' be declared null and void, and that the defendant be ordered to relinquish same to the plaintiff. III That the defendant be permanently enjoined from acting under the authority of said 'power of attorney,' and that she be permanently enjoined from interfering with your plaintiff in the possession, control and enjoyment of his individually owned property. IV And for such other relief as this Honorable Court shall deem meet." In her answer the defendant denied that she had interfered with the rights of the plaintiff so far as possession and enjoyment of his property are concerned except as authorized by the power of attorney referred to in the bill, and set up "that the 1942 Packard touring clipper sedan was bought by the plaintiff on condition of sale and the title to the same was held by a finance company as security for the balance of the purchase price; that the plaintiff defaulted in his pay-

ments to said company and that the defendant acquired title to the car by paying the balance due` thereon. . . . that the Prudential insurance policy was given to her by. the plaintiff. . . . that if she ever had any war bonds belonging to the plaintiff, the same have been delivered to him. . . . that the only personal property belonging to the plaintiff in her possession consists of certain articles of clothing and that the same may be had by him at any time." In her answer the defendant admitted having received notice of revocation of the power of attorney on October 20, 1943. The judge made "findings of fact and order for decree," and entered a final decree that "the defendant is indebted to the plaintiff in the amount of fifteen hundred and sixty-five dollars, without costs, and that execution issue therefor." The defendant's appeal brings the case before us.

The evidence being reported, it is our duty under the familiar rule to examine it and to decide the case according to our own judgment, giving due weight to the findings of fact of the judge which will not be reversed unless plainly wrong. The material facts found by the judge and those we find ourselves (*Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178) may be summed up as follows: Sometime prior to February 27, 1942, the parties were married. The plaintiff was then "in the army." At the time of the hearing he was a lieutenant colonel in the army air force of the United States, and had been in the service for about eight years. On February 27, 1942, he was stationed at Bangor in the State of Maine. On that day he executed and delivered to the defendant a power of attorney in which he appointed her his lawful attorney, and so far as here material conferred upon her "powers irrevocable, for me and in my name and stead to use, to ask, demand, levy, require, recover, and receive of and from all and every person or persons, whomsoever the same shall or may concern, all and singular sums and sum of money, debts, goods, wares, merchandise, effects and things whatsoever and wheresoever they shall and may be found due, owing, payable, belonging and coming unto me, the constituent, by any ways and means whatsoever, and more especially to accept,

indorse, deposit and collect checks, drafts and any other evidence of indebtedness for me and in my name, and to give proper receipts for same, and further to give her full power and authority to sell or dispose of any and all personal property which I may own including household furniture, automobile and any other personal property belonging to me without any further authority from me, she is to be the sole judge in all matters pertaining to my property." On or about October 15, 1943, the defendant filed a libel for divorce from the plaintiff, and on October 20, 1943, the defendant received notice that the power of attorney was revoked. Following the execution of the power of attorney the defendant obtained from the plaintiff possession of ten United States war bonds of the face value of $100 each, a Packard automobile called a "touring clipper sedan," and a policy of life insurance in the amount of $5,000 in which as changed the defendant was named as beneficiary. That policy was delivered by the defendant to the plaintiff in open court during the course of the hearing. The parties had a joint checking account upon which, in accordance with permission given to her by the plaintiff, the defendant could draw as she pleased. The plaintiff's monthly pay check was deposited in that account until the order for temporary alimony was made in the divorce proceedings. The rights of the plaintiff to the automobile and the war bonds or their respective proceeds are the only issues with which we are here concerned, since the plaintiff did not appeal from the final decree entered by the judge. The defendant has delivered three of the ten war bonds to the plaintiff. A fourth is the property of the daughter of the parties. The six remaining bonds were the joint property of the parties. These six bonds were disposed of by the defendant without authority of the plaintiff. The automobile in question had been bought by the plaintiff in October, 1942, on a conditional sale agreement upon which there remained due the sum of $235. In November, 1943, the defendant paid to the conditional vendor the amount just mentioned; and although she had received notice on October 20, 1943, that the power of attorney given to her

by the plaintiff was revoked, she sold the automobile for $1,500 to a "farmer from either New Hampshire or Vermont" in February, 1944. From these proceeds she repaid a loan of $235 which she had borrowed to pay the amount due to the conditional vendor, and expended the balance for personal expenses of her own including a fur coat at a cost of $400 and a trip to "Texas and California" at a cost of $450. After starting her divorce proceedings and down to the time of the hearing in the court below she had been receiving $200 a month from the plaintiff under an order of the court where the divorce libel was pending. The plaintiff never received any notice from the conditional vendor of the automobile of any intention to repossess it, and never authorized the defendant to sell it. When he "went away on or about October 15, 1943," the automobile was sent to Holyoke under the defendant's care to be stored in her father's garage upon the representation of the defendant that there was room for it there, and the plaintiff authorized her to use it temporarily while her father's automobile was out of commission. In the findings and order for decree the judge found that the defendant should account to the plaintiff for the difference between what she sold the automobile for ($1,500) and the amount that she paid to the conditional vendor ($235), that is, that she should account to the plaintiff for $1,265, together with the value of three of the six war bonds before referred to, namely, $300. In his findings and order for decree the judge ruled that the "bill does not contain proper allegations or prayer for the return of the personal property or an accounting therefor," and stated that nevertheless "the case was fully tried upon this matter and such relief may be given under the prayer for general relief."

The contentions of the defendant are that the relief granted by the final decree entered by the judge is not within the scope of the bill, that the decree in substance awards damages for the conversion of property properly the subject of an action at law, which would not lie since the parties are husband and wife, and that this does not give the plaintiff any standing in equity.

It is established that there is jurisdiction in equity of suits between husband and wife to secure his or her separate property. *Patterson* v. *Patterson,* 197 Mass. 112, 117. *Gahm* v. *Gahm,* 243 Mass. 374, 376. *MacKenzie* v. *MacKenzie,* 306 Mass. 291, 292. *Levy* v. *Levy,* 309 Mass. 486, 491. *Smith* v. *Smith,* 313 Mass. 687, 693. *Charney* v. *Charney,* 316 Mass. 580, 582–583. *Matek* v. *Matek,* 318 Mass. 677, 679. *Swenson* v. *Swenson,* 320 Mass. 105. The defendant makes no contention that the personal property involved was not the separate property of the plaintiff.

Upon the appeal now before us, since the evidence is reported, all questions of law, fact and discretion are open for our decision. *Kevorkian* v. *Moors,* 299 Mass. 163, 166. *Bernhardt* v. *Atlantic Finance Corp.* 311 Mass. 183, 184. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 178, and cases cited. We are not bound by the ruling of the judge that the "bill does not contain proper allegations or prayer for the return of the personal property or an accounting therefor." We are of opinion that its allegations properly interpreted are sufficient to support the relief granted, and that the relief granted was not inconsistent with the special prayers of the bill. This being so, the plaintiff may obtain any relief consistent with the nature of his case under the prayer in the bill for general relief. *Bleck* v. *East Boston Co.* 302 Mass. 127. It appears from the record that when the bill was filed the defendant had not sold the automobile in question. The bill was filed on October 21, 1943, and the record discloses that the defendant did not sell the automobile until February, 1944. It is a fair inference that when the bill was filed the plaintiff was proceeding on the assumption that the war bonds involved were still in the defendant's possession. The evidence does not disclose whether she disposed of them before or after the bill was filed, and the policy of insurance referred to in the bill was in her possession at the time of the hearing. In the bill the plaintiff alleged that the defendant was interfering with his possession and control of the personal property individually owned by him including that with which we are now concerned, and by the special prayers sought in substance that she be

restrained from so doing. Too much stress should not be laid on particular words, *MacLennan* v. *MacLennan*, 311 Mass. 709, 714, and rightly interpreted we are of opinion that the allegations of the bill were broad enough to support the relief that it was necessary to grant to protect his rights whether by return of the personal property in question, or by payment to him of the proceeds, which here was the only remedy that could be afforded him when it was disclosed by the evidence that the defendant had disposed of the personal property involved which was owned by the plaintiff in his own right and which he had entrusted to her for safe keeping. That in such instances relief may be granted by way of decree for payment to the plaintiff of the proceeds of sale of the property or its value, however disposed of by the defendant without authority, is established by such cases as *Levy* v. *Levy*, 309 Mass. 486, 492, *Smith* v. *Smith*, 313 Mass. 687, and *Swenson* v. *Swenson*, 320 Mass. 105, 107. See also *Morrison* v. *Morrison*, 320 Mass. 133. The relief granted in the present case was not the payment of a debt in the usual sense, but the payment of the proceeds of personal property which had been held by the defendant upon a trust for the plaintiff. The present proceeding was not the equivalent of an action at law for damages, but was one coming within the exceptions set forth in *Gahm* v. *Gahm*, 243 Mass. 374, 376.

*Blumenthal* v. *Blumenthal*, 303 Mass. 275, and *Charney* v. *Charney*, 316 Mass. 580, relied upon by the defendant, are not in point. In each of the cases just cited the relief sought by the bill was the payment of a debt alleged to be due from the husband to the wife under a separation agreement, and relief was denied on the ground that the bill was brought to enforce a simple contract between husband and wife for the payment of money and hence was not within the jurisdiction of our courts of equity. To the same effect see *Weidman* v. *Weidman*, 274 Mass. 118. There is nothing said in *Matek* v. *Matek*, 318 Mass. 677, in conflict with what we have said here.

The decree entered in the court below is to be modified by including an order that the defendant pay to the plaintiff the amount therein decreed to be due from her to him, and as thus modified it is

*Affirmed.*