FLORENCE R. BOLTZ *vs.* FRED S. BOLTZ
(and a companion case[1]).

Bristol.    March 10, 1950. — May 3, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Marriage and Divorce,* Validity of marriage. *Pledge. Trust,* Parol trust.

Evidence, that a woman, divorced nisi in this Commonwealth on June 13, had moved to New York in the preceding April, and on June 18 went through a ceremony of marriage in New York with a man with whom she lived in New York as wife and husband until after December 17, a child being born to them in November, warranted a finding of a com-

---

[1] The companion case is by Florence R. Boltz against Fred S. Boltz and Bay State Tap and Die Company, a corporation.

mon law marriage in New York, which, on their moving to Massachusetts after December 17 and continuing to live together here for about twenty-nine years, was valid here and gave her a standing to maintain a petition for separate support.

Evidence at the hearing in a Probate Court of a petition in equity by a wife to have established a trust in her favor in certain corporate shares which she had transferred to the defendant, her husband, warranted findings that the transfer was only as security for advances made by him, which subsequently were repaid to him, that she never intended to surrender ownership of the shares, that the understanding of the parties was that they would be transferred back into her name whenever she requested, that she had so requested, that they were equitably her property, and that she was entitled to their retransfer.

PETITION, filed in the Probate Court for the county of Bristol on December 23, 1947, for separate support; also a

PETITION in equity, filed in the same court on February 5, 1948.

The cases were heard by *Fuller*, J.

*E. G. Townes*, (*E. H. Stevens* with him,) for the respondent.

*J. W. McIntyre*, (*E. F. Henry* with him,) for the petitioner.

LUMMUS, J. The first case is a petition to the Probate Court, filed December 23, 1947, alleging cruel and abusive treatment on the part of the respondent husband, and praying for separate support. On December 3, 1948, the Probate Court entered a decree in favor of the petitioner and ordered the respondent to pay for her support $30 a week. The respondent appealed.

The parties went through a ceremony of marriage in the city of New York on June 18, 1918, when the husband was thirty-one years old and the wife was thirty-eight. They lived together as husband and wife in New York, as the petitioner testified until after Christmas, 1918, or as the respondent testified until after December 17, 1918. The judge found that they lived together as husband and wife in New York until sometime between December 17 and the end of December, 1918, and then moved to Massachusetts where they have since remained. They separated on December 20, 1947.

The petitioner had been the wife of one Smith, and ob-

tained a decree nisi of divorce from him in Massachusetts on June 13, 1918. The divorce became absolute on December 13, 1918. She had moved to New York about April, 1918. The first question in the case is whether she ever became the wife of the respondent. Unless she did, she cannot maintain this petition for separate support. *Shain* v. *Shain*, 324 Mass. 603. The ceremony of marriage of June 18, 1918, did not make her the wife of the respondent, for on that day her divorce from Smith was not absolute, and she was still the wife of Smith and remained such until December 13, 1918. *Levanosky* v. *Levanosky*, 311 Mass. 638, 640. No other ceremony of marriage ever took place between the parties. After the latter part of December, 1918, they were domiciled in Massachusetts.

We put to one side any possible contention that a finding would be warranted that the parties had become "legally married" under G. L. (Ter. Ed.) c. 207, § 6.[1] For the purposes of this case, we assume that no marriage in Massachusetts, other than a ceremonial marriage, could have been valid. *Commonwealth* v. *Munson*, 127 Mass. 459. *Norcross* v. *Norcross*, 155 Mass. 425.

There is no finding, and no evidence, that after the parties came from New York into Massachusetts to live in December, 1918, they ever lived as husband and wife in any State other than Massachusetts. It follows that, to maintain her petition, the petitioner must prove a valid nonceremonial marriage in New York, taking place between December 13, 1918, and the end of that month. If there was such a mar-

---

[1] The trial judge found as follows: "At the time of the ceremony of June 18, 1918, both parties knew of the recent divorce. The petitioner recognized she could not be married lawfully in Massachusetts, but believed she could be married lawfully in New York. Boltz was in the navy and made a trip to France in the summer of 1918. Except during that trip the parties lived together in New York until some time after his discharge from the navy on December 17, 1918. Between that date and the end of December, they moved to Mansfield. They had children, owned property together, including one parcel held as tenants by the entirety, and continuously held themselves out as husband and wife for twenty-nine and one half years. They made conveyances and mortgages in which each joined to release curtesy or dower respectively. The parties intended to be married and thought they were lawfully married until Boltz contended otherwise after the present proceeding was started."

riage, it is valid here.  *Commonwealth* v. *Graham*, 157 Mass. 73, 75.  *Craddock's Case*, 310 Mass. 116.

General Laws (Ter. Ed.) c. 207, § 10, the substance of which was in force in 1918, provides that "If any person residing and intending to continue to reside in this commonwealth . . . goes into another jurisdiction and there contracts a marriage prohibited and declared void by the laws of this commonwealth," such marriage shall be null and void here.  That section does not apply to the present case, for there is no finding and no evidence that the petitioner resided in this Commonwealth in December, 1918, or went into another jurisdiction for the purpose of contracting a marriage which would have been void if contracted here. The inference from the evidence is that she was already domiciled in New York before December, 1918, indeed in April, 1918, and there is nothing to show that she intended to return to Massachusetts at any time before she did so.

The finding of the judge that the parties were lawfully married by a common law marriage in New York between December 17, 1918, and the end of that month, was supported by the evidence, and must stand.  The fact that they went through a ceremony of marriage on June 18, 1918, was strong evidence that they intended that the petitioner was to become a wife and not merely a mistress.  *Matter of Haffner*, 254 N. Y. 238, 244.  That intention on June 18, 1918, could be found to continue through December, 1918.  *Galdston* v. *McCarthy*, 302 Mass. 36, 37.  *Matter of Keenan*, 313 Mass. 186, 219.  *Sawyer's Case*, 315 Mass. 75, 78.  That is fortified by the fact that a daughter, Martha, had been born on November 12, 1918, and is admittedly the child of both parties.  The respondent testified that he always held the petitioner out as his wife.  From January 1, 1908, until April 29, 1933, common law marriages could lawfully be contracted in New York.  N. Y. Laws of 1907, c. 742.  N. Y. Laws of 1933, c. 606.  *Ziegler* v. *P. Cassidy's Sons*, 220 N. Y. 98, 107.  *Matter of Haffner*, 254 N. Y. 238, 242.  *People* v. *Massaro*, 288 N. Y. 211, 215.  *Pemberton* v. *Pemberton*, 60 N. Y. Sup. (2d) 655, 657.

The respondent does not argue against the finding of the judge that he was guilty of cruel and abusive treatment toward the petitioner, nor against the amount of the payments ordered. We find no error in the decree for separate support.

The second case is a petition to the Probate Court, filed February 5, 1948, to establish a trust in favor of the petitioner Florence R. Boltz in two hundred seventy shares of the common stock of Bay State Tap and Die Company, a Massachusetts corporation, and to compel the retransfer of that stock to her by the respondent Fred S. Boltz. From a decree in favor of the petitioner the respondent appealed.

The judge, at the request of the respondent, made a finding of the material facts, which may be summarized as follows. On the death of the petitioner's mother in 1927, she inherited a half interest in five hundred fifty shares of the stock, which as a whole were pledged to the Beacon Trust Company for a loan of $9,000. The respondent paid $4,160.61 on the loan, and the petitioner obtained certificates for two hundred seventy shares and for five shares. The respondent made further advances, and the petitioner on October 25, 1932, transferred two hundred seventy shares into his name, which he held as security for the repayment of his total advances of $5,335.61. He later received dividends of $30,105, which repaid his advances, and left a balance which he used with her approval in paying her expenses and those of the family. She never intended to surrender ownership of the shares. The understanding of the parties was that they would be transferred back into her name whenever she requested. She did so request on December 20, 1947, but the transfer was not made. The judge found that the shares are equitably the property of the petitioner, · who is entitled to have them transferred to her.

We have examined the evidence, and find nothing to vitiate the conclusion of the judge that the stock in question belongs to the petitioner wife. The respondent does not, and could not, contend that the court has not jurisdiction of controversies over property between husband and wife.

*Charney* v. *Charney,* 316 Mass. 580, 582, 583. *Matek* v. *Matek,* 318 Mass. 677, 679. *Yurkanis* v. *Yurkanis,* 321 Mass. 375, 380. *White* v. *White,* 322 Mass. 461, 465. G. L. (Ter. Ed.) c. 208, § 33, as appearing in St. 1936, c. 221.

The result is, that in the petition for separate support the decree is affirmed, and that in the equity case the decree is affirmed.

*So ordered.*