JULIUS LEVY *vs.* HELEN LEVY.

Suffolk. April 11, 1941. — July 28, 1941.

Present: FIELD, C.J., QUA, DOLAN, & COX, JJ.

*Trust*, What constitutes, Constructive. *Husband and Wife. Equity Jurisdiction*, To enforce trust, Suit between husband and wife, Plaintiff's clean hands.

A wife, who, on her husband's orders given at her request, received money from his accounts in banks upon her promise to return to him "on demand such money as was left after using it" for setting up housekeeping and on her representation that the "great bulk" of it would be protected for him "in the event of business difficulties," held a balance of the money, unexpended at the time of a demand by the husband, on an express trust which, upon her repudiation, the husband could enforce in equity.

Even if a husband was actuated by a purpose of defrauding his creditors in turning over funds to his wife upon an express trust for him, he was not thereby precluded from enforcing the trust in a suit in equity against her.

---

[1] The official New Hampshire citation was not available at the time of publication of this volume. — REPORTER.

Upon a finding by a master in a suit in equity by a husband against his wife, that on a day when they separated he lent her his watch and that she had not returned it to him, a final decree ordering such return was free from error.

A husband could not maintain a suit in equity against his wife for the reassignment and redelivery to him upon his demand of a policy of insurance upon his life which he had assigned and delivered to her upon the understanding and agreement that she would so reassign it and redeliver it upon his demand, where the bill contained no averments and there were no findings as to the purpose of the assignment which would support a conclusion of an express trust or of a constructive trust; and he had no right to money borrowed by the wife upon such policy.

BILL IN EQUITY, filed in the Superior Court on September 16, 1938.

The case was heard on the master's report by *Baker*, J.

*M. Caro*, (*S. Z. Kaplan* with him,) for the defendant.

*H. Snyder*, for the plaintiff.

DOLAN, J.   This is a suit in equity in which the plaintiff seeks an accounting from the defendant, his wife, of certain moneys alleged by him to have been entrusted to her, and also the assignment and delivery to him of a certain policy of life insurance, and the delivery of certain articles of jewelry alleged by him to be wrongfully withheld by her.

Upon the coming in of the master's report the judge entered an interlocutory decree overruling the defendant's exceptions to the report and confirming the report.   The defendant appealed from this decree.   Thereafter the judge entered a final decree that the defendant "holds the sum of $2,512.73 upon trust" for the plaintiff, that she be ordered to pay the same with costs to the plaintiff, that she be ordered to deliver to him a gold watch — "the property of" the plaintiff, that she deliver to him "policy of life insurance upon the life of the . . . [plaintiff] issued by the John Hancock Mutual Life Insurance Company in the sum of $10,000 being the property of the . . . [plaintiff]," and that her counterclaim be dismissed without costs.   The defendant duly appealed.   She has not argued before us that the dismissal of her counterclaim was erroneous.

The parties in this case are the same as in the case of *Levy* v. *Levy, ante*, 230, in which the plaintiff here, as libel-

lant, sought unsuccessfully to obtain a decree of nullity of his marriage with the libellee, the defendant in this case.

The material facts found by the master may be summarized as follows: The parties were married in New York on January 3, 1938. They were at all times domiciled in Massachusetts, to which they returned on the day just mentioned. On January 13, 1938, the plaintiff gave the defendant $421 to pay for a "so called engagement ring." Prior to giving her this sum of money, in a conversation overheard by a third person, he told the defendant that he had over $5,000 in cash. The defendant went over the books of the corporation of which the plaintiff was president and owner of fifty per cent of the stock, and then informed the plaintiff that "his money was not safe in the event that the business got into financial difficulties; that he should turn over his money to her and that she would use it for setting up housekeeping and return to him on demand such money as was left after using it for said purpose; [and] that the great bulk of the money would be protected for the . . . [plaintiff] in the event of business difficulties." As a result, the plaintiff during the months of January, February and March turned over to the defendant by way of orders on several savings banks $5,550.42, of which she "actually received" $4,550.42. The plaintiff had stated to a "Mrs. Shuman" that he had given the defendant "a one thousand . . . dollar gift as a St. Valentine's day gift." The master found, however, that he made that statement for the purpose of "making . . . Mrs. Shuman think that . . . [he] was being very good to" the defendant. The plaintiff did give one order on February 15, 1938, to the defendant, on the Eliot Savings Bank of Roxbury, in the sum of $1,088.56, which she collected. Out of the total sum actually received by the defendant she expended for household purposes, including furnishings, and for other purposes with the consent of the plaintiff, $2,662.06, leaving in her hands as of May 27, 1938, the date of the separation of the parties, "the sum of . . . $1,848.36 [*sic*]."[1]

---

[1] In their briefs the parties treat this figure as if properly computed. We deal with it on that basis.

On February 1, 1938, the plaintiff was the owner of a policy of insurance issued by the John Hancock Mutual Life Insurance Company of Boston in the sum of $10,000. On that date he assigned the policy to the defendant upon her request and her statement that he could have a re-assignment of the policy "upon request.". Late in August (about three months after the parties separated) the defendant borrowed $1,061 on this policy, which was its maximum loan but not its maximum cash surrender value. This policy is in her possession.

On the day the parties separated the plaintiff lent the defendant a "twenty-one jewel gold . . . watch" which she has not returned to him.

1. The plaintiff contends that the moneys transferred by him to the defendant were upon an express trust, under the terms of which she was to return upon demand by him any portion that had not been expended; that her refusal so to do constituted a breach of trust by her entitling him to an accounting in this proceeding, and an order to pay to him the sum found to have been unexpended by her at the date of separation. The defendant contends, on the other hand, that the transaction was one of a gift rather than a trust, and further, that even if a trust was created, it was a "joint trust" under which she should be credited with amounts expended by her for necessaries since the date of the separation.

To establish a trust of the moneys remaining in the hands of the defendant after the expenditures made by her in accordance with the understanding of the parties, it was necessary for the plaintiff to prove that it was not intended at the time of the transfers to the defendant that she should take a beneficial interest in the property by way of gift, settlement or advancement. *Pollock* v. *Pollock*, 223 Mass. 382, 384. *Berry* v. *Kyes*, 304 Mass. 56, 61, and cases cited. In the instant case, in contradistinction to other decided cases such as the *Pollock* case just cited, the moneys involved were those of the plaintiff. No contribution to the funds in question was made by the defendant. The controlling factor is the manifestation by the parties of an

intention that a trust be created — a question of fact. *Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 90, 91. Scott, Trusts, § 23. Am. Law Inst. Restatement: Trusts, § 23. The master's finding that the funds involved were turned over by the plaintiff to the defendant, at her request, to be used by her for setting up housekeeping, and upon her promise to return to him "on demand such money as was left after using it for said purpose," and her representation that the great bulk of the money would be protected "in the event of business difficulties," is consistent with the subsidiary findings made by him and so must stand. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. The conclusion is that there was no intention to make a gift of the funds to the defendant, but that the intention was that the defendant should hold them in trust for the plaintiff upon the terms under which the transfer to the defendant was made. In so far as the funds were to be used as necessary by the defendant for setting up housekeeping, that constituted not a gift to her, but a trust to that extent for the joint benefit of the parties, and did not affect the express promise of the defendant to return to the plaintiff upon demand such sum as should remain unexpended for those purposes. Since it appears that she has disavowed the trust, the plaintiff is entitled to an accounting and complete relief. See *Cram* v. *Cram*, 262 Mass. 509, 511, 512. The present case is distinguishable from *Rosman* v. *Rosman*, 302 Mass. 158, where the funds involved were transferred by a husband to his wife with an understanding that, after the payment of their expenses, the balance was to be held for their joint benefit, and it was held that the funds constituted a trust for their joint benefit. In the instant case the understanding of the parties, and the specific promise of the defendant, was to return the balance remaining of the fund, in effect, at any time upon demand.

The defendant seasonably excepted to the master's failure to credit her with sums expended by her for necessaries after May 27, 1938, when she and the plaintiff ceased to live together. In our view, however, of the understanding of the parties we are of opinion that her obligation was

to return any balance of funds remaining in her hands upon demand by the plaintiff, and that there was no error on the part of the judge in overruling this exception of the defendant to the master's report.

We do not adopt the contention of the defendant that the findings of the master, in connection with the statement made by the plaintiff to Mrs. Shuman that he had given the defendant $1,000 as a Valentine's day gift, required a conclusion that such a gift was in fact made by the plaintiff. The proper inference from the findings of the master as to this subject matter read with his other subsidiary findings is that such a gift was not in fact made.

The defendant's argument that the only "reasonable and warranted inference" to be drawn from the findings of the master is that the transfers of the moneys were made by the plaintiff "as part of his scheme to convey in fraud of his creditors" is without merit. Without intimating that the facts found show that the transfers involved were made for the purpose of defrauding creditors, no fraud was practised upon the defendant and she cannot rely upon any alleged attempt of the plaintiff to defraud third persons. *Paula* v. *Soares*, 304 Mass. 450, 451. *Zak* v. *Zak*, 305 Mass. 194, 196, and cases cited.

2. With reference to the watch which the master found had been lent by the plaintiff to the defendant and not returned, the defendant argues that a husband may not recover a loan made to his wife, citing G. L. (Ter. Ed.) c. 209, § 2, *Bassett* v. *Bassett*, 112 Mass. 99, and *Young* v. *Young*, 251 Mass. 218. That statute forbidding the making of contracts between husband and wife, and the cases cited having to do with that subject matter, have no application to the relief sought by the plaintiff in connection with the watch that he lent to the defendant. The watch is confessedly that of the plaintiff. The defendant, by the position taken by her in argument, must be deemed to have refused to return it to him. It is settled that jurisdiction in equity exists of conflicting rights of husband and wife concerning property. *MacKenzie* v. *MacKenzie*, 306 Mass. 291, and cases cited. The order of the judge con-

tained in the final decree that the defendant deliver the watch to the plaintiff was free from error.

3. The only allegations of the bill with respect to the policy of life insurance in question are that the plaintiff delivered it to the defendant upon the understanding and agreement that she would "reassign and redeliver . . . [it] to . . . [him] at any time upon his demand; that he has since made demand upon . . . [her] for a reassignment and redelivery to him of the . . . policy," but that in breach of the agreement she "wrongfully has refused to do so." These are also the sole findings of the master as to the transaction. There are no averments in the bill as to the purpose of the assignment to support a finding of an express trust, nor any averments of fraud to raise the implication of a constructive trust and the findings of the master as to this transaction, read in the light of his other findings, are not sufficient to establish either an express or a constructive trust of the policy or any of its proceeds. See *Ciarlo* v. *Ciarlo*, 244 Mass. 453, 454. By virtue of the assignment the defendant became the owner of the policy and the parties being husband and wife the plaintiff is not entitled to relief upon the express contract of the defendant to "reassign and redeliver" the policy to him upon demand. G. L. (Ter. Ed.) c. 209, § 2. *Gahm* v. *Gahm*, 243 Mass. 374, 375, 376, and cases cited. *Taylor* v. *Ashe*, 284 Mass. 182, 187.

It does not appear clearly in the record how the judge computed the sum of $2,512.73 which he decreed that the defendant should pay to the plaintiff with costs. It is a fair inference, however, that he reached that amount by adding to the sum of $1,848.36 (the balance of the money entrusted to the defendant which the master found she had in her possession when the parties separated) the sum borrowed by the defendant on the policy of insurance less certain deductions for premiums paid by her on the policy after the separation. The plaintiff so states in his brief. It follows from what we have already said that it was error to include in the amount ordered to be paid by the defendant to the plaintiff any part of the sum obtained by her from the loan

on the policy, and to order her to assign and deliver the policy to the plaintiff.

The final decree entered in the court below must be modified by striking out in paragraph one "$2,512.73" and by substituting therefor $1,848.36 as the sum held in trust by the defendant for the plaintiff, by striking out in paragraph two "$2,512.73" and by substituting therefor $1,848.36 as the sum to be paid by the defendant to the plaintiff, and by striking out the order contained in paragraph four, that the defendant deliver to the plaintiff the policy of life insurance upon the life of the plaintiff issued by the John Hancock Mutual Life Insurance Company in the sum of $10,000. The entry will be

<div style="text-align:center">

*Interlocutory decree affirmed.*

*Final decree as modified affirmed with costs.*