WILLIAM T. RUSSELL *vs.* GERTRUDE MEYERS
(and four companion cases [1]).

Middlesex.   November 8, 1943. — September 12, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Trust,* Express trust: what constitutes. *Gift. Husband and Wife.*

There was no error in dismissing suits in equity brought by a husband
    after his wife's death to recover money deposited in joint accounts
    established by her with several of her relatives from money turned
    over by him to her over a long period of years in an amount exceeding
    the expense of their support, where the evidence did not show to be
    plainly wrong a finding that the plaintiff had failed to prove that such
    money was impressed with a trust for his benefit or that it was not a
    gift to her.

FIVE BILLS IN EQUITY, filed in the Superior Court on June
9, 1942.

The cases were heard by *Morton, J.*

*F. H. Pardee,* for the plaintiff.

*L. R. Chamberlin,* for the defendants.

RONAN, J.   These are five appeals from final decrees dis-
missing bills brought by the plaintiff to recover eleven joint
deposits and two notes transferred by his wife, now deceased,
to the various defendants.   He alleges that these deposits
and notes were the proceeds of funds which he turned over
to his wife in trust, that the funds were to be used for the
support and maintenance of their home and the balance
was to be invested and kept by her for the plaintiff's use,
and that she in violation of the terms of the trust made
the transfers to the defendants without consideration and
with knowledge that she had no right to make them.

Many of the facts appearing in the transcript of the evi-
dence are not in dispute.   The plaintiff has been engaged
for nearly sixty years in a successful manufacturing busi-

---

[1] The four companion cases are by the same plaintiff against Barbara
Meyers, Annie M. Pierce, Russell D. Pierce, and Marjorie Pierce.

ness and has also invested considerable sums in real estate mortgages. At the time of his marriage in 1905 he was, and since then has been, a man of substantial means. Mrs. Russell had little or no property when she married the plaintiff. The defendant Annie M. Pierce was her sister, and the remaining defendants were her two nieces, a nephew and a grandniece. Russell had a checking account in a local bank at the time of his marriage, and it was his custom to indorse his salary checks and whatever other checks he received and turn them over to his wife for deposit in this account which stood in his name. It was his practice to sign blank checks which were to be filled out by his wife, some of which were undoubtedly intended for and were used by her for the payment of household expenses. In June, 1905, she established a checking account in her own name in the same bank from funds which she had withdrawn from his account, and thereafter other funds which came from him were deposited in this account. Both accounts continued up to the time of her death in January, 1942, but both had been changed to joint accounts before her death. The wife made various joint accounts with the different defendants and held jointly with one of them two notes secured by real estate mortgages. These joint accounts and the notes had a value of more than $66,000. She disposed of more than $30,000 by her will. At the time of her death she had four joint accounts with the plaintiff.

There was also evidence that the relations between the plaintiff and his wife were always harmonious and happy. He considered her a woman of honor and integrity. The check books in his and her accounts and the cancelled checks were kept in a desk and were accessible to him. There is not the slightest evidence that he could not have obtained whatever information he may have desired with reference to the disposition made by her of funds that came from him. The expenses for their support and maintenance were moderate, and the difference between the thousands of dollars which he turned over to her for nearly thirty-seven years and these expenses greatly exceeded the bal-

ance standing in his checking account at the time of her death. We do not think that he was ignorant of the condition of this account while it was handled by his wife or that he was ignorant that a few months after their marriage she opened her own account. Both filed income tax returns. Each spoke of the property which he held as his own. He knew she had her own income which according to the evidence he considered more than she could "begin to spend."

There was testimony indicating that he knew in 1914 or 1915 that his wife opened a joint account with her sister, Mrs. Pierce, when she asked the latter in his presence to sign a signature card for the bank; that he learned in 1927 that she had a joint account with a niece, Marion, and similar accounts for "the rest of the children" of Mrs. Pierce; that he knew years before her death that his wife had joint accounts with the defendant Meyers and her daughter Barbara and that she wanted the money to go to them and not to the husband of Mrs. Meyers; and that he knew that she had gratuitously discharged a mortgage for $4,000 which she held on the real estate of Mrs. Meyers. We need not mention other instances of his wife's generosity to her relatives which could have been found to have come to his attention years prior to her death. He was cordial and friendly to her relatives. One of them lived at his home for four years and another one had been employed by him to care for the books and records of his wife and himself when she on account of illness was unable to do so. The fact that these gifts to the defendants were kept in a safety deposit box other than the one held jointly by herself and her husband is not significant as an attempt by her to conceal from him the fact that she had made these provisions for her relatives in view of the testimony tending to show that he knew with whom she held these boxes. There was no evidence that he ever objected to the withdrawal of funds from his account or to her depositing his checks in her account or to the purposes for which she was using the money. None of the defendants contributed anything to the joint accounts or mortgage notes now in ques-

tion with the exception of $2,500 which came from the estate of Annie M. Pierce's mother.

The judge found that the plaintiff had not proved that there was any definite arrangement between himself and his wife relative to the use of the funds received by her. The judge also found that it was not proved that these funds were not a gift or that they were impressed with a trust, constructive or otherwise, in the plaintiff's favor.

The plaintiff contends that the judge was in error in refusing to find that the wife held the funds in trust for her husband. In equity, the findings of a judge made on oral testimony are not to be reversed unless they are plainly wrong. *Boston* v. *Santosuosso*, 307 Mass. 302, 332. *Di Massa* v. *Great American Novelty Co.* 314 Mass. 1, 3.

A trust in personal property may be created by an oral arrangement and its existence may be proved by parol evidence. *Peck* v. *Scofield*, 186 Mass. 108. *Mee* v. *Fay*, 190 Mass. 40. The plaintiff, who was the only one who testified with reference to any trust, testified that the balance of the funds over what was required for their expenses was to be held by her for the benefit of himself and her and "what comfort we might get out of it for the future." A husband may establish a trust in funds which he had delivered to his wife for the purpose of paying expenses for their support and of holding the remainder of the funds for his benefit or their mutual benefit. *Moore* v. *Mansfield*, 248 Mass. 210. *O'Brien* v. *O'Brien*, 256 Mass. 308. *Cram* v. *Cram*, 262 Mass. 509. *Gibbons* v. *Gibbons*, 296 Mass. 89. *Buckley* v. *Buckley*, 301 Mass. 530. *Zak* v. *Zak*, 305 Mass. 194. *Levy* v. *Levy*, 309 Mass. 486. *Thompson* v. *Thompson*, 312 Mass. 245. But whether a trust is created depends primarily upon the manifestation by the parties of an intention to create a trust and that is ordinarily a question of fact. *Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86, 90. *Levy* v. *Levy*, 309 Mass. 486, 489–490.

The testimony of the husband was to be weighed with the other evidence. His words and conduct subsequent to the time he made an arrangement with his wife with reference to his funds could be considered in determining whether

any trust was created. *Bancroft* v. *Russell,* 157 Mass. 47. *Atkins* v. *Atkins,* 279 Mass. 1, 8. *Rock* v. *Rock,* 309 Mass. 44, 47, 48. *Harrington* v. *Donlin,* 312 Mass. 577, 583. There is a presumption that money transferred by a husband to his wife is a settlement, advancement or gift. *Tileston* v. *Tileston,* 234 Mass. 530. *Sigel* v. *Sigel,* 238 Mass. 587. *Scanzo* v. *Morano,* 284 Mass. 188. *Hogan* v. *Hogan,* 286 Mass. 524. *Moat* v. *Moat,* 301 Mass. 469. *Berry* v. *Kyes,* 304 Mass. 56. We see no distinction between delivering the funds directly to the wife and permitting her to withdraw sums from his accounts or to deposit the checks indorsed by him in her account. In the absence of proof of a trust, "it must be deemed that the money, property or conveyance was received with the intention that it be applied to the use and benefit of either or both at the discretion of the recipient." *English* v. *English,* 229 Mass. 11, 12–13. *Hogan* v. *Hogan,* 286 Mass. 524.

The judge was not required to adopt the plaintiff's testimony, especially where there was much evidence, although from interested parties, pointing in another direction. The credibility of the witnesses was for the trial judge, and he was not plainly wrong in refusing to find that there was any trust or that the wife had no right to use the funds as she did.

*Decrees affirmed.*