GUISEPPE BRANCALEONE & others *vs.* ANTHONY PARISI
& others
(and a companion case[1]).

Essex.    December 13, 1974. — November 18, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Equity Pleading and Practice,* Master: findings. *Equity Jurisdiction,*
   Stockholder's suit. *Evidence,* Of intent. *Corporation,* Officers and
   agents, Stockholder, Purchase by corporation of its stock. *Sale,* Of
   stock. *Fiduciary. Damages,* Counsel fees.

In a suit by corporate shareholders to recover stock surrendered by
   them to the corporation, summaries of evidence furnished by a mas-

[1] Salvatore R. Novello *vs.* Gloucester Marine Railways Corporation
and Anthony Parisi.

ter in response to objections raised by the defendants, even though furnished in general narrative form, were sufficient to support his findings. [569-570]

In a suit by corporate shareholders to recover stock surrendered by them to the corporation, there was no abuse of discretion in a master's permitting counsel for the plaintiffs to ask leading questions of his witnesses. [570]

In a suit in which corporate shareholders claimed that the corporation's president had fraudulently induced them to surrender stock to the corporation, there was no error in the admission of evidence that the president had misused his fiduciary relationship with the plaintiffs to excuse payment of a debt owed to the corporation by another corporation in which he had a substantial interest at about the same time as the surrender of the plaintiffs' stock since this evidence was relevant to the defendant's fraudulent intent to capitalize on his fiduciary relationship to plaintiffs. [570-571]

In a suit in which corporate shareholders claimed that the corporation's president fraudulently induced them to surrender their stock to the corporation so that he could obtain control of the corporation, evidence that the president offered to return one shareholder's stock with the understanding that it would be voted under the president's name was admissible to show the president's intent to control the corporation and not excludable as a statement leading to the settlement of the suit. [571]

Where the president of a corporation had used corporate funds to finance the defense of a suit against him, the corporation and certain intervenors, in which it was found that the president had acted fraudulently in inducing other shareholders to surrender stock to the corporation, and where corporate funds had also been used to finance the defense of a suit to enjoin the expenditure of corporate funds for the defense of the first suit, this court directed that the president share the costs of appeal in the first suit with the intervenors, bear the costs of appeal in the second case, and reimburse the corporation for its expenses, including counsel fees, in defense of both suits. [572-574]

Two BILLS IN EQUITY filed in the Superior Court on December 29, 1970, and March 30, 1973, respectively.

The first suit was heard by *Linscott,* J., on a master's report. The second suit was heard on the merits by *Coddaire,* J., after an interlocutory decree was entered by *Rutledge,* J.

*Paul F. Ware, Jr.* (*Robert A. Trevisani* with him) for Gloucester Marine Railways Corporation.

*David B. Gardner & Robert P. Sullivan* for Anthony Parisi & others.

*James T. Ronan* for Guiseppe Brancaleone & another.

KEVILLE, J.   These are two cases, which were argued together on appeal, involving the alleged misconduct of Anthony Parisi (Parisi), president of the Gloucester Marine Railways Corporation (corporation). A single justice of this court granted a stay of the defendants' appeal in the first case pending the Superior Court's decision in the second case.

### The First Case

This suit was brought against Parisi and the corporation by twenty-one of its stockholders who seek the return of stock surrendered by them to the corporation. The case was referred to a master. The defendants[2] have appealed from an interlocutory decree denying their motions to recommit the master's report, overruling their exceptions thereto and confirming the report, and from a final decree which, in effect, ordered the return of the plaintiffs' stock upon the payment by them of the amounts originally received in exchange for their stock.

The facts summarized are drawn from the master's report. In September of 1970, when the plaintiffs (some of whom were directors of the corporation) collectively held a controlling interest in the corporation, the corporation sold real estate for $80,000. They adopted a proposal advanced by Parisi that the corporation distribute the proceeds from the sale of the real estate ratably among all of the stockholders in exchange for a partial surrender of their shares without incurring tax liability or violating the corporation's obligations to certain of its creditors. Parisi misrepresented that this was to be accomplished in such a way that there would be no change in the proportionate ownership or control of the corporation.

The plaintiffs, having placed their trust and confidence

---

[2] Nine of the stockholders (intervenors), seven of whom were employees of the corporation, were permitted to intervene as parties defendant. The master found that their intervention was solicited by Parisi and that, with corporate counsel, he selected the attorney to represent them.

in Parisi, surrendered stock pursuant to this plan. They thereafter discovered that Parisi, members of his family, and other stockholders upon whose proxies he could rely, had not surrendered their shares, and thus had collectively gained control of the corporation. Parisi, with assistance from corporate counsel,[2a] caused a false record to be made of the minutes of the meeting of the directors at which the vote was taken to adopt the plan of distribution.[3] The minutes as recorded misrepresented the vote taken to be no more than an offer by the corporation to buy stock from those stockholders wishing to sell. When the plaintiffs, two months later, were apprised of the facts, they instituted this litigation to obtain the return of their stock.

Where, as here, the master was not instructed to report the evidence, we need not consider the defendants' contention that the master's subsidiary findings were plainly wrong with respect to the record made under Parisi's direction of the directors' meeting described above, and with respect to other evidence as well. *Morin* v. *Clark,* 296 Mass. 479, 483 (1937). *Shelburne Shirt Co. Inc.* v. *Singer,* 322 Mass. 262, 265 (1948). Furthermore, from our review of the summaries of evidence furnished by the master in response to objections raised by the defendants,[4] we conclude that the evidence was sufficient as matter of law to support his findings. *Morin* v. *Clark, supra. M. De-Matteo Constr. Co.* v. *Daggett,* 341 Mass. 252, 263 (1960). Although it is apparent that the master took liberties with the letter of Rule 90 of the Superior Court (1954) (see, e.g., *Lombardi* v. *Bailey,* 336 Mass. 587, 591 [1958]) in furnishing evidence in general narrative form to support his findings, his summaries were sufficient, when considered in conjunction with the comprehensive findings of his re-

---

[2a] Not present counsel.

[3] In the absence of the clerk, Parisi acted as temporary clerk for that meeting. In addition to one Ellis, the remaining directors present were three of the plaintiffs who had limited ability to read, understand or speak English.

[4] Approximately two hundred in number.

port, to enable the judge and this court to ascertain the bases for his findings. There was no abuse of discretion in denying the defendants' motion to recommit. *Twomey* v. *Roy,* 320 Mass. 759 (first case) (1946). *M. DeMatteo Constr. Co.* v. *Daggett, supra.*

The record lends no support to the defendants' initial assertion that the plaintiffs themselves were guilty of fraudulent conduct and that they were thus estopped from seeking a rescission of their stock transactions with the corporation. Nor does it support their claim of bias on the part of the master.

They have excepted to various evidentiary rulings made by him and found in a transcript of 3,390 pages representing twenty-six days of trial and the testimony of forty-four witnesses. They argue four instances in which they contend that the master erred in permitting counsel for the plaintiffs to ask leading questions. We discern therein no abuse of discretion. *Guiffre* v. *Carapezza,* 298 Mass. 458, 460 (1937). *Commonwealth v. Lewis,* 346 Mass. 373, 380 (1963), cert. den. 376 U. S. 933 (1964). *Commonwealth* v. *Fiore,* 364 Mass. 819, 825 (1974).

It does not appear that there was error in the admission of evidence which revealed that Parisi employed his position of trust and confidence among the plaintiffs to maneuver the write-off of a debt of $33,000 owed to the corporation by another corporation of which he was president and financial officer and in which he had a substantial interest. Each of the plaintiff directors signed the vote excusing the collection of this debt upon Parisi's representation that it was "for the bank." This episode overlapped in point of time that of the surrender of the plaintiffs' stock and was admissible as evidence of his fraudulent intent (*Commonwealth* v. *Abbott Engr. Inc.* 351 Mass. 568, 572 [1967]; see Wigmore, Evidence, § 371 [3d ed. 1940]) to capitalize upon his fiduciary relationship to the plaintiffs (as to that relationship see *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* 367 Mass. 578, 587-588, 592-597 [1975]). There was, in any event, no showing that the admission of this evidence injuriously affected the

substantial rights of the defendants (G. L. c. 231, § 132), nor is it in any way reflected in the judge's disposition of the case.

We discern no error in the admission of a statement made by Parisi to one of the plaintiffs, Moceri, in which Parisi offered to return Moceri's stock "with the idea of, I want your stock to be voted under my name." The statement was admissible to demonstrate Parisi's intent to dominate the corporation rather than excludable as a statement leading to the settlement or compromise of the dispute. *Calvin Hosmer, Stolte Co.* v. *Paramount Cone Co. Inc.* 285 Mass. 278, 281-282 (1934). Remaining evidentiary issues raised by the defendants are without merit and need not be discussed.

The matter of costs and expenses, including counsel fees, is dealt with in our disposition of the second case. In the first case, the interlocutory and final decrees are affirmed.

*So ordered.*

## *The Second Case*

In the second case Novello, the treasurer of the corporation, who was also the clerk, a director, secretary to the board of directors and a stockholder (and one of the plaintiffs in the first case), brought a bill of complaint in the Superior Court against the corporation and Parisi to enjoin the use of corporate funds to pay for the appeal in that case, to vacate the appearance of counsel for the corporation in that case, and to compel reimbursement by Parisi of all corporate funds incurred for legal expenses since September 15, 1970, the date of the last meeting of the board of directors.[5]

Novello has appealed from the denial of his motion to vacate the appearance of counsel for the corporation, from the entry of an interlocutory decree modifying an earlier

---

[5] No objection has been raised to the form of Novello's bill which was brought presumably in behalf of the corporation.

restraining order in the second case, which had barred the disbursement of corporate funds for costs and expenses of the appeal in the first case or for any legal expenses not expressly authorized by the board of directors of the corporation,[6] and from a final decree dismissing the bill.

The issue raised is whether Parisi, as president of the corporation, exceeded his authority in retaining counsel for the corporation and in obligating the corporation to pay costs and expenses, including legal fees, in the first case without the approval of the board of directors.

The evidence is not reported but the judge made voluntary findings of fact. It is not apparent that they were all of the findings upon which his decree was based. In the circumstances, we take them to be true unless inconsistent with each other or with the pleadings. *Sturnick* v. *Watson*, 336 Mass. 139, 143 (1957). *Johnson* v. *McMahon*, 344 Mass. 348, 351 (1962).

The judge found that the corporation, through Parisi as president, "had a practice of hiring counsel to represent it in matters such as law suits and other matters in the usual course of its business ... with the knowledge, ratification or acquiescence of the board of directors," that both cases involved controversies over internal matters of the corporation and that Parisi, as president, had expended corporate funds for legal representation of the corporation in the first case and in its pending appeal. He found that the corporation was an indispensable party in the first case and entitled to be represented by counsel in that suit, that an "impasse" existed due to the inability of the board of directors "to convene a meeting" (apparently for lack of a quorum), and, therefore, that the question of legal representation had not been and could not be presented to the board.

---

[6] The modification somewhat ambiguously ordered the continuation of the restraining order until May 4, 1973, "except as to payment by Respondents to the Clerk of the Superior Court, of one third of the estimated cost of printing the Appeal [in the first case]." We construe this order as authorization for the payment from the corporate treasury of one third of that cost.

In dismissing the bill, the judge made no explicit finding of fact or ruling of law whether in the circumstances of these controversies involving "internal matters of the corporation," Parisi had authority without the approval of the board of directors to retain counsel for the corporation or to apply corporate funds for that purpose. See *Kelly* v. *Citizens Fin. Co. of Lowell, Inc.* 306 Mass. 531, 532-533 (1940); *Lucey* v. *Hero Intl. Corp.* 361 Mass. 569, 573 (1972). See also *Lydia E. Pinkham Medicine Co.* v. *Gove,* 298 Mass. 53, 63-66 (1937).

In view of our disposition of the cases, it becomes unnecessary to pass upon the correctness of the judge's conclusion, which may be implicit in the final decree dismissing the bill, that Parisi had authority to commit corporate funds to the corporation's defense.[7] Viewing the second case in light of the record in the first case (see *Culhane* v. *Foley,* 305 Mass. 542, 543 [1940]; *Gordon* v. *Gordon,* 332 Mass. 210, 213 [1955], cert. den. 349 U. S. 947 [1955]; *Poland* v. *New Bedford, Woods Hole, Martha's Vineyard and Nantucket S. S. Authy.* 342 Mass. 75, 77, n. 2 [1961]; *Miller* v. *Norton,* 353 Mass. 395, 399 [1967]; *Flynn* v. *Brassard,* 1 Mass. App. Ct. 678, 681 [1974]), we consider this to be an appropriate instance to invoke (for the benefit of the corporation) an exception to the general rule (*Commissioner of Ins.* v. *Massachusetts Acc. Co.* 318 Mass. 238, 241 [1945]; *Chartrand* v. *Riley,* 354 Mass. 242, 243-244 [1968]) that each litigant, apart from the award of statutory costs, must assume the burden of his own expenses including counsel fees.

Where the occasion for this litigation was engendered by the fraudulent conduct of Parisi in furtherance of his ambition to gain control of the corporation, thus giving rise to unwarranted corporate expenditures, in the exercise of our discretion it is directed that Parisi, in addition to sharing the costs of appeal in the first case with the inter-

---

[7] In his order for decree there is included an addendum that "relief is denied without prejudice to any possible determination of the reasonableness of counsel fees and expenses that may be raised hereafter."

venors, bear the costs of appeal in the second case and reimburse the corporation for its expenses, including counsel fees, in defense of both suits. *Wheeler* v. *Hanson,* 161 Mass. 370, 376 (1894). *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 183 (1919). *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 129 (1959). *Wilson* v. *Jennings,* 344 Mass. 608, 621 (1962). See *Taussig* v. *Wellington Fund, Inc.* 187 F. Supp. 179, 222-224 (D. Del. 1960), affd. 313 F. 2d 472 (3d Cir. 1963), cert. den. 374 U. S. 806 (1963). Contrast *Chartrand* v. *Riley, supra,* at 245.

The interlocutory decree modifying the temporary restraining order and the final decree dismissing the bill are reversed. The second case is remanded to the Superior Court for further hearing to determine and to impose costs, expenses and counsel fees and for the entry of a judgment in accordance with this opinion.

*So ordered.*