EBEN HUTCHINSON *vs.* SARAH M. HUTCHINSON & another.[1]

Essex.    May 17, 1978. — November 29, 1978.

Present: KEVILLE, GOODMAN, & BROWN, JJ.

*Practice, Civil*, Notice of appeal. *Trust*, What constitutes. *Husband and Wife*, Bank Account, Gift. *Evidence*, Conversation between husband and wife. *Equity Jurisdiction*, Plaintiff's clean hands.

In an action for equitable relief in which the plaintiff claimed he had transferred shares of stock to his wife to be held in trust for his benefit, G. L. c. 233, § 20, First, did not disqualify the plaintiff from testifying to a private conversation with his wife concerning the transaction. [710–712]

In an action by a husband seeking reconveyance of shares of stock he had transferred to his second wife in order to prevent his first wife, to whom he owed alimony and child support payments, from attaching them, there was sufficient evidence to support a finding that the second wife held the stock in trust for the benefit of her husband, and in the circumstances, this court would not deny the husband equitable relief under the clean hands doctrine on the ground that the transaction was fraudulent as against his first wife. [710–711]

---

[1] Robert N. Roop.

In an action by a husband seeking reconveyance of his interest in property he had transferred to his wife, there was sufficient evidence to warrant a finding that the wife held the real estate in an express trust for the benefit of her husband even though the wife's promise to hold the property in trust was oral. [712]

In an action by which a husband sought reconveyance of funds held in a savings account in his wife's name, there was sufficient evidence to warrant findings that both the husband and wife had an interest in the funds, which could be expended only for their mutual advantage, and that the funds were subject to a trust for their joint benefit. [712–713]

CIVIL ACTION commenced in the Probate Court for the county of Essex on March 18, 1976.

The case was heard by *Keedy*, J.

*Philip Litman (Charles F. Grimes* with him) for the defendants.

*John S. Leonard* for the plaintiff.

BROWN, J. By this action for equitable relief brought in a Probate Court, the plaintiff sought to have the defendants Sarah M. Hutchinson (his second wife) and Robert N. Roop (Sarah's son by a former marriage) compelled to reconvey to the plaintiff (1) various shares of stock, (2) the marital domicil (locus), and (3) funds in a bank account. The action was tried together with actions by the plaintiff for divorce and by Sarah for separate support. The trial judge filed "Findings, Rulings, and Order for Entry of Judgments." In the action for equitable relief he ordered that judgment enter directing (1) that the various shares of stock (or the proceeds of the sale thereof) be transferred by Sarah to the plaintiff, (2) that title to the locus be divested from the defendant Roop (to whom Sarah had conveyed it) and be vested in the plaintiff and Sarah as tenants by the entirety, and (3) that one-half of the funds from the bank account (which Sarah had withdrawn and placed in an account in another bank in her name and that of Heather Roop, her daughter by a former marriage) be transferred to the plaintiff. The judge also ordered that judgments enter dismissing the plaintiff's divorce action and awarding Sarah separate support. No

appeal has been taken from the ensuing judgments in the latter two actions.

Within ten days of the ensuing judgment in the action for equitable relief, the defendants filed a motion for a new trial of that action. Mass.R.Civ.P. 59, 365 Mass. 827–828 (1974).[2] While that motion was pending the defendants filed a notice of appeal from the judgment in the action for equitable relief. Subsequently, the motion for a new trial was denied. The defendants filed no new notice of appeal from the judgment after the denial of the motion for a new trial. The defendants' motion for a new trial having suspended the finality of the judgment (see Mass.R.A.P. 4, 365 Mass. 847 [1974] and the fifteenth paragraph of the Reporters' Notes to Mass.R.Civ.P. 59, Mass. Ann. Laws, Rules of Civil and Appellate Procedure at 375 [1974]), the notice of appeal they filed was premature. 6A Moore, Federal Practice, par. 59.09[4], at 3856 (2d ed. 1974), and cases cited in note 15. However, since the plaintiff has not been prejudiced by the prematurity of the notice of appeal, we will not avoid a decision on the merits on the basis of such a technicality. *Stokes* v. *Peyton's Inc.*, 508 F.2d 1287 (5th Cir. 1975). 9 Moore, Federal Practice, par. 204.14 (2d ed. 1975). See *Keohane* v. *Swarco, Inc.*, 320 F.2d 429, 432 (6th Cir. 1963), and *Firchau* v. *Diamond Natl. Corp.*, 345 F.2d 269, 271 (9th Cir. 1965). Rather, we treat the notice of appeal as "an effective, although inept, attempt" to appeal from the judgment in the action for equitable relief. *Foman* v. *Davis*, 371 U.S. 178, 181 (1962).

We have before us the judge's findings of fact together with portions of the transcript designated pursuant to Mass.R.A.P. 18, as amended effective July 1, 1976, 370 Mass. 919. In these circumstances we cannot set aside the judge's findings unless they are clearly erroneous, but we

---

[2] The Massachusetts Rules of Civil Procedure are, of course, applicable to this action for equitable relief. Mass.R.Civ.P. 1, 365 Mass. 730 (1974).

may find facts in addition to those found by him. *Sanguinetti* v. *Nantucket Constr. Co.*, 5 Mass. App. Ct. 227, 228–229 (1977). See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974).

Accepting as true the judge's undisputed findings of fact, we summarize the relevant evidence in its aspects most favorable to the plaintiff. The plaintiff is an attorney specializing in real estate law. In 1968 he married Sarah, who worked as a nurse during at least a portion of the time they lived together. The following year they acquired the locus as tenants by the entirety, the plaintiff contributing approximately $44,000 and Sarah $11,000 of the $55,000 cost. In September, 1974, the plaintiff's first wife, from whom he had been divorced in 1967, filed an action for contempt in which she alleged that the plaintiff owed her over $12,000 in back alimony and child support payments. The plaintiff denied the arrearages and filed a petition to modify the decree ordering the alimony and child support payments.

In the spring and summer of 1975 the plaintiff developed a severe drinking problem, and on July 9 he voluntarily entered a hospital for treatment. Upon his release from the hospital in early August the plaintiff visited the lawyer he had hired to represent him in the litigation with his first wife.[3] The lawyer advised him that, pending the outcome of the litigation with his first wife, he should transfer his assets to Sarah's name in order to prevent the first wife from attaching those assets and so that he could honestly testify under oath that he did not own them.[4] Sarah was not present at the meeting but was aware of the litigation.

---

[3] That lawyer does not represent the plaintiff in the present litigation.

[4] No inference should be drawn that we approve of this legal advice, as the issue is not properly before us. But see in this regard, S.J.C. Rule 3 : 22, DR 7–102 (A) (7), 359 Mass. 820 (1972).

On August 8 the plaintiff executed a deed to Sarah of his interest in the locus. The deed was recorded and shortly thereafter came into Sarah's possession. The plaintiff also arranged with his stockbroker to have various shares of stock owned by him (and worth at the time over $40,000) transferred to Sarah. He had purchased these shares of stock entirely with his own money.

In early December, 1975, the action for contempt brought by the plaintiff's first wife was dismissed upon the plaintiff's agreement to pay her $1,250.[5] On Christmas Eve the plaintiff resumed drinking for the first time since he had entered the hospital the previous July. On January 5, 1976, the plaintiff and Sarah separated, and ten days later the plaintiff voluntarily reentered the hospital for treatment. On January 23, without informing the plaintiff, and without consideration, Sarah conveyed the locus to the defendant Roop. Two days later, again without informing the plaintiff, she withdrew the entire $9,700 balance from a savings account at the Ipswich Savings Bank which was in her name. Both the plaintiff and Sarah had deposited certain of their earnings in this account and had used the money in the account to pay household expenses as the need arose. Sarah redeposited the $9,700 in an account in her name and that of her daughter Heather Roop at the Danvers Savings Bank.

The plaintiff was released from the hospital on February 5, 1976. He sought a reconciliation with Sarah until, in March, he learned of her conveyance of the locus and withdrawal of funds from the savings account at the Ipswich Savings Bank. The present litigation resulted.

In addition to the above evidence the plaintiff was allowed over the defendants' objection to give the following testimony. Before conveying his interest in the locus and transferring the stock to Sarah he had a conversation

---

[5] The plaintiff's first wife filed a second action for contempt in September, 1975. The record appendix does not disclose what became of that action.

with her in which she indicated that she understood "that all [the plaintiff's] property was being put in her name . . . to protect [him] against any legal encounters [he] might have," and "that [the] house and the stocks and bonds were put in her name for [his] benefit." Sarah "said she would hold title for" the plaintiff.

1. *The shares of stock.* The judge ruled that Sarah "holds, in trust, for the benefit of the [plaintiff] the . . . shares of stock." Whether a trust in the stock was created depends upon whether there was a "manifestation by the parties of an intention that a trust be created—a question of fact." *Levy* v. *Levy*, 309 Mass. 486, 489–490 (1941), and authorities cited. *Russell* v. *Meyers*, 316 Mass. 669, 672 (1944). The plaintiff's testimony as to his conversation with Sarah prior to the transfer of the stock, if properly admitted, supports a finding that the parties did manifest an intention that Sarah hold the stock in trust for the plaintiff's benefit. *Zak* v. *Zak*, 305 Mass. 194, 196 (1940), and cases cited. *Levy* v. *Levy*, 309 Mass. at 488, 489–491. See *Chretien* v. *Chretien*, 356 Mass. 463, 465 (1969). Contrast *English* v. *English*, 229 Mass. 11, 12 (1917), and *Druker* v. *Druker*, 268 Mass. 334, 339–340 (1929).

The defendants, however, contend that the plaintiff's testimony as to the conversation should have been excluded pursuant to G. L. c. 233, § 20, First. We disagree. Section 20, First, of G. L. c. 233, as amended through St. 1963, c. 765, § 3, does not disqualify a husband from testifying to private conversations with his wife "in a proceeding arising out of or involving a contract made by a married woman with her husband." This is such a proceeding. The transaction entered into by the plaintiff and Sarah, as testified to by the plaintiff, constituted a contract by which the plaintiff transferred his stock (and his interest in the locus) to Sarah in exchange for her promise or undertaking to hold the property in trust for the plaintiff.[6] See *Twomey* v. *Crowley*, 137 Mass. 184 (1884), *Crom-*

---

[6] The defendants' other evidentiary contentions are also without merit. We discern no abuse of discretion in the judge's permitting the

*well* v. *Norton*, 193 Mass. 291, 293 (1906), and *Kemp* v.
*Kemp*, 248 Mass. 354, 358 (1924). See also *Bennett* v. *Littlefield*, 177 Mass. 294, 300 (1901), and *Ross* v. *Ross*, 2
Mass. App. Ct. 502, 513 (1974), cert. denied, 420 U.S. 947
(1975). Compare § 17 with §§ 203 and 204 of Bogert,
Trusts and Trustees (2d ed. 1965).

Sarah having repudiated the trust, the judge's order
that the stock be returned to the plaintiff must be upheld
(*Cram* v. *Cram*, 262 Mass. 509, 511–512 [1928]; *Levy* v.
*Levy*, 309 Mass. at 490) unless under the clean hands
doctrine the plaintiff should have been denied the aid of
a court of equity on the ground that the transaction was
fraudulent as against his first wife. Sarah did not allege
fraud by the plaintiff in her answer (*Rotondi* v. *Rotondi*,
325 Mass. 503, 504 [1950]), nor does she appear otherwise
to have raised any issue of clean hands before the judge.
Her passing reference to the issue in her brief does not
constitute argument pursuant to Mass.R.A.P. 16(a) (4), as
amended, 367 Mass. 921 (1975). *Carter* v. *Empire Mut. Ins.
Co.*, *ante* 114, 122 n.8 (1978). Sarah's oral agreement to
hold the stock in trust for the plaintiff's benefit, as testified to by the plaintiff, did not disclose on its face the
fraudulent character of the transaction. Contrast *Caines*
v. *Sawyer*, 248 Mass. 368, 374 (1924), and cases cited.
Sarah indicated only that she understood that the purpose of the transaction was "to protect [the plaintiff]
against *any* legal encounters [he] might have" (emphasis
supplied). Such a purpose is not fraudulent as matter of
law. *Cram* v. *Cram*, 262 Mass. at 512. *Burwen* v. *Burwen*,

---

plaintiff's counsel to ask certain questions alleged to be leading. *Commonwealth* v. *Lewis*, 346 Mass. 373, 380 (1963), cert. denied, 376 U.S.
933 (1964). *Brancaleone* v. *Parisi*, 3 Mass. App. Ct. 566, 570 (1975).
Even assuming the judge erred in excluding testimony which the
defendants sought to introduce as to two conversations between the
plaintiff and Sarah, the defendants have not shown that they were
harmed by the exclusion. *Bermingham* v. *Thomas*, 3 Mass. App. Ct.
742, 742 (1975).

2 Mass. App. Ct. 29, 32–33 (1974), and cases cited. The plaintiff's first wife is not a party to the present litigation, and no fraud has been practiced upon Sarah. In these circumstances, we will not, of our own motion (*Paula* v. *Soares*, 304 Mass. 450, 451 [1939]; *Rotondi* v. *Rotondi*, 325 Mass. at 505), interfere to deny the plaintiff relief under the clean hands doctrine. *Zak* v. *Zak*, 305 Mass. at 196. *Levy* v. *Levy*, 309 Mass. at 491. See *Murphy* v. *McKenzie*, 1 Mass App. Ct. 553, 558 n.3 (1973).

2. *The plaintiff's interest in the locus.* The judge's order that title to the locus be returned to the plaintiff and Sarah as tenants by the entirety rested on his finding that Sarah "holds upon a constructive trust the [plaintiff's] interest in the" locus. We need not reach the issue of the correctness of that finding because we conclude that the real estate is held by Sarah in an express trust. Although Sarah's promise to hold in trust the property transferred to her, including the plaintiff's interest in the locus, was oral, she "does not set up the statute of frauds (G. L. [Ter. Ed.] c. 203, § 1; c. 259, § 1 Fourth), and therefore cannot rely upon it." *Abalan* v. *Abalan*, 329 Mass. 182, 183 (1952). *Young* v. *Paquette*, 341 Mass. 67, 76 (1960). Contrast *Tourtillotte* v. *Tourtillotte*, 205 Mass. 547, 551–552 (1910); *Frank* v. *Visockas*, 356 Mass. 227, 229 (1969). Thus, a finding of an express trust of the real estate is not precluded so long as there is evidence to support such a conclusion. We rule on this record that Sarah holds the plaintiff's interest in the real estate under an express trust. As the evidence relative to the securities is the same as that concerning the real estate, it follows that the result is the same. Accordingly, it was not error for the judge to order that the property be reconveyed to the husband and wife as tenants by the entirety.

3. *The funds in the savings account.* The judge found that the funds Sarah withdrew from the Ipswich Savings Bank "represented money [she and the plaintiff] had jointly contributed and was held for their mutual benefit." On the basis of this finding the judge ruled that the

plaintiff owns half of the funds withdrawn. There was no error.

It is true that the mere fact that a husband contributes to an account in his wife's name does not give rise to a trust or support a claim by him to a portion of the account (*Tenczar* v. *Tenczar,* 332 Mass. 105, 106 [1954]); indeed, there is a rebuttable presumption that the husband intended a gift. *Russell* v. *Meyers,* 316 Mass. at 673. *Ross* v. *Ross,* 2 Mass. App. Ct. at 508, and cases cited. However, in the present case there was evidence that the funds in the account at the Ipswich Savings Bank were used to pay the plaintiff's and Sarah's household expenses, and the judge could infer that the surplus was saved for their joint benefit and enjoyment. The evidence thus supported findings that the presumption of a gift was rebutted, that both the plaintiff and Sarah had an interest in the funds, which could be expended only for their mututal advantage, and that the funds were subject to a trust for their joint benefit. *Moore* v. *Mansfield,* 248 Mass. 210, 215 (1924), *Cram* v. *Cram,* 262 Mass. at 511–512. *Rosman* v. *Rosman,* 302 Mass. 158, 159 (1939). See *Russell* v. *Meyers,* 316 Mass. at 672.

It follows from what has already been said that there was no error in the judge's denial of the defendants' motion for a new trial.

*Judgment affirmed.*