JOHN F. RUSSELL, JR., & another *vs.* ANTHONY RUSSELL, JR., & others. October 2, 1984. *Practice, Civil,* Master: report of evidence, exhibits. *Trust,* What constitutes, Creation. *Fiduciary.*

The plaintiffs brought this action in the Superior Court essentially for the purpose of establishing their beneficial ownership of certain stock in a family corporation, the Union Cartage Company (UCC). After adoption of a master's report, a judgment entered which established the plaintiffs' ownership of the stock and directed UCC (a named defendant) and certain of the individual defendants (an uncle and one cousin of the plaintiffs) to deliver the stock to the plaintiffs. These defendants have appealed.

1. We first deal with a procedural issue material to review of the master's report. In connection with the preparation of the appeal, the parties entered into a stipulation purporting to agree "that the transcript of the proceedings before the [m]aster . . . shall be included in the record on appeal." Based on the stipulation, the parties have reproduced in the record appendix lengthy portions of the oral testimony before the master.

The order of reference to the master was entered on September 22, 1981, and is governed by the provisions of Mass.R.Civ.P. 53, as amended, 367 Mass. 917 (1975), in effect prior to the 1982 amendment of the rule. See *Pollock* v. *Marshall,* 391 Mass. 543, 554 n.9 (1984). The order provided that the facts found by the master would be final and that he was not to file a transcript of the evidence with his report. No order has entered allowing reproduction of the underlying testimony. The stipulation relied upon by the parties appears to have been made in reliance on the provisions of

Mass.R.A.P. 8(d), as appearing in 378 Mass. 934 (1979), but (even assuming the rule would apply in this context) is nugatory under that rule since it was never approved by a judge of the Superior Court. The defendants' requests for summaries of the evidence have been abandoned on appeal. We conclude that no part of the transcript relied upon by the parties is properly here. See *Michelson* v. *Aronson,* 4 Mass. App. Ct. 182, 187 (1976). *Frank D. Wayne Assoc.* v. *Lussier,* 16 Mass. App. Ct. 986, 987 and n.1 (1983), and cases cited.

By the same stipulation the parties also purported to include as part of the record "all exhibits entered into evidence" before the master. The master expressly incorporated nine exhibits in his report. Another exhibit (exhibit 6) was referred to by the master but not incorporated, apparently as the result of inadvertence. We conclude that only the ten exhibits mentioned or discussed by the master in his report are before us and that the remainder of the exhibits which have been reproduced in the record appendix are to be ignored. See *Jones* v. *Gingras,* 3 Mass. App. Ct. 393, 395 (1975); *Harbor Schools* v. *Board of Appeals of Haverhill,* 5 Mass. App. Ct. 600, 602 n.4 (1977); *Powell's Gen. Contr. Co.* v. *Marshfield Hous. Authy.,* 7 Mass. App. Ct. 763, 768 (1979).

2. The core of the dispute before the master concerned the interpretation of an agreement executed January 7, 1970, and the effect of assignments of UCC stock signed by the plaintiffs on May 14, 1976. The master made subsidiary findings of fact detailing the history of UCC as a closely held Russell family corporation, the dealings of the defendants (particularly the defendant Joseph Russell who is known in the family as "Nemo") with respect to the stock of UCC, and the conduct of Nemo and other defendants relative to the plaintiffs and the agreements embodied in the relevant exhibits. Based on the subsidiary findings of fact, the master concluded (1) that Nemo made a gift of UCC stock to his nephews in late 1969 or early 1970; (2) that the January 7, 1970, agreement created an irrevocable trust which made the plaintiffs beneficial owners of ninety shares each of UCC stock; (3) that Nemo, as the trustee of that trust, owed the plaintiffs a fiduciary duty to inform them fully of the legal effect of the May 14, 1976, assignments and the effects of any other documents by which "they may have signed away their rights as stockholders"; and (4) that the May 14, 1976, assignments were invalid. The master ultimately determined that each plaintiff unconditionally owned ninety shares of stock.

Although the master spoke in the report of the transfer of the disputed stock as a "gift," it is manifest that he did so principally to indicate that Nemo and the other individual defendants had formed a general donative intent to favor the plaintiffs with ultimate ownership of a definite number of shares of UCC stock. We consider the master's analysis of the case to rest in the conclusions, summarized above, as to the existence of a trust. We will analyze the defendants' contentions on appeal in this light. The main contentions made by the defendants are: (1) that the January 7, 1970,

document did not create a valid and enforceable trust, and (2) that Nemo owed no fiduciary duty to the plaintiffs, and, as a result (3) that the assignments executed by the plaintiffs on May 14, 1976, terminated any rights the plaintiffs may have had in the stock of UCC.

(a) The January 7, 1970, agreement is poorly drafted. (The master called it "confusing" and found that the lawyer who prepared it was "inexperienced in trust matters.") The question whether a trust exists is essentially a question of fact, see *Russell* v. *Meyers,* 316 Mass. 669, 672 (1944), and the existence of a trust does not depend upon the terminology used, *Rugo* v. *Rugo,* 325 Mass. 612, 616 (1950). A manifestation of an intention to create "a fiduciary relationship with respect to property, [which] subject[s] the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person" will ordinarily establish the existence of a trust. Restatement (Second) of Trusts § 2 (1957). See *Atkins* v. *Atkins,* 279 Mass. 1, 8 (1932); *Russell* v. *Meyers, supra.* The agreement here is denominated a "Trust Agreement," declares its "corpus" to be made up of 360 shares of UCC stock, appoints Nemo as the "[s]ole [t]rustee," provides for successor trustees in the event of Nemo's death or disability, empowers Nemo to hold the shares "upon an active trust," and calls for distribution of the shares held in trust upon the attainment of prescribed ages by certain named nephews of Nemo. There was notice to the beneficiaries of the creation of the trust. Despite the imperfections in the over-all quality of its draftsmanship, we think the instrument manifests an intention to create a trust.

The defendants' argument that no trust was created is based on an interpretation of the instrument which has no logical basis in the language of the agreement or in the facts found by the master. There was no need for Nemo to deliver the stock certificates to the plaintiffs in order to perfect the trust. "If the owner of property declares himself trustee of the property a transfer of the property is neither necessary nor appropriate." Restatement (Second) of Trusts, *supra* § 32 comment m. See *Bourgeois* v. *Hurley,* 8 Mass. App. Ct. 213, 218 (1979). Support for a conclusion that the trust was not subject to revocation or modification is found in the absence of any such powers in the instrument. See *Thorp* v. *Lund,* 227 Mass. 474, 476 (1917); *Nickerson* v. *Fiduciary Trust Co.,* 6 Mass. App. Ct. 317, 321 (1978). The fact that Nemo sought unilaterally to rearrange the beneficial interests of his nephews in the stock on various occasions after 1970 is not significant. By making himself trustee, Nemo retained legal title to the shares without impairing his ability to exercise incidents of the ownership thereof vis-à-vis the corporation. The fact that he later changed his mind about how the shares should be allocated among his nephews has no bearing on his intention in 1970. No other argument of the defendants persuades us that the agreement was not a trust. Nor are we persuaded by the defendants' reliance on cases which either bear no material factual resemblance to this case or which deal with an outright gift as distinguished from a transfer in trust.

(b) The master's conclusion that agreements subsequent to the trust and the execution of the May 14, 1976, assignments did not affect the plaintiffs' rights to their stock is also correct. There is no question that Nemo became bound to the plaintiffs as a fiduciary by reason of the provisions of the trust. The master found that the plaintiffs were "in fear of [Nemo]"; that they "partially relied on the relationship of trust they had with . . . Nemo, at the time they executed the stock certificates, assignments and trust agreements"; that they "executed the stock certificates and assignments dated May 14, 1976, without full knowledge or being adequately informed that they were assigning their rights to the stock as set forth in the Trust Agreement"; and that Nemo never "explain[ed] to the [p]laintiffs, the legal significance or the contents of the assignments." The master further found that "[a]t the time of the execution of the assignments only . . . Nemo and [Nemo's son] had received legal counsel and understood the legal consequence of the execution of the assignments."

In the absence of the underlying evidence, these findings must be considered fully warranted. The findings, and the absence of any intervening interests of innocent parties, bring the case squarely within the principle that "where a person is induced to sign a legal document by one standing in a fiduciary relation to that person and where the fiduciary has an interest in the document's execution . . . the document can generally be avoided by its signer on a showing merely that the fiduciary failed to make him aware of the legal significance of the signing of the document, provided that the rights of innocent third persons have not intervened." *Markell* v. *Sidney B. Pfeifer Foundation, Inc.,* 9 Mass. App. Ct. 412, 440-441 (1980). The defendants cannot rely on the assignments to deny the plaintiffs the rights conferred by the trust.

*Judgment affirmed.*

*John G. Fabiano* for the defendants.
*James D. O'Brien, Jr.,* for the plaintiffs.